**Theodore CARPENTER**

v.

**Officer John DIZIO, Officer Joseph Flite, Officer Joseph Feeney, Officer Sidney Landis, Officer Ernest Allmond, Officer John Monaghan, Officer Terrence Mulvihill and the City of Philadelphia.**

**Civ. A. No. 79–91.**

United States District Court, E. D. Pennsylvania.

Jan. 9, 1981.

Robert M. Fellheimer, Philadelphia, Pa., for plaintiff.

Gerald T. Clark, Asst. City Sol., Philadelphia, Pa., for defendants.

## MEMORANDUM

BECHTLE, District Judge.

This case arose from an incident which took place on January 27, 1977. The plaintiff, Theodore Carpenter ("Carpenter"), was walking alone in the vicinity of 13th and Cuthbert Streets in Philadelphia at approximately 8:30 p.m. when he was approached by a person who appeared to him to be a "bum." While pushing Carpenter, the "bum" demanded money from him. Thinking that he was about to be mugged, Carpenter struck the person once. This "bum" was in reality Philadelphia Police Officer John Dizio. Four other plainclothes officers of the Philadelphia Police Department's "Grand-pop" Squad arrived on the scene and proceeded to repeatedly strike and beat Carpenter, using their fists and drawn gun butts, thereby inflicting severe injuries to him.

The injured Carpenter, bleeding and dazed, after being secured in handcuffs and placed in a police wagon, was taken to Metropolitan Hospital and later to Wills Eye Hospital for treatment of his injuries. He was subsequently driven to the Police Administration Building where he was charged with various crimes, including robbery, receiving stolen goods, resisting arrest, aggravated assault and terroristic threats. At a preliminary hearing, it was determined that probable cause had existed for Carpenter's arrest. Unable to post bail, he remained incarcerated at the Philadelphia Detention Center until February 2, 1977.

Carpenter was brought to trial in the Philadelphia Court of Common Pleas before the Honorable William J. Marutani on November 25, 1977. On November 29, 1977, a jury found him not guilty of all criminal charges.

Subsequently, Carpenter brought the instant civil rights action alleging various constitutional violations by Officers Dizio, Joseph Flite, Ernest Allmond, John Monaghan, Sidney Landis, Joseph Feeney and Terrence Mulvihill, as well as the City of Philadelphia ("City").[1] On December 14, 1979, after an eight-day trial, a jury returned a verdict in favor of the plaintiff on the state pendent claims against the following defendants: (1) Officers Dizio and Flite on charges of false arrest, false imprisonment and malicious prosecution; and, (2) Officers Allmond and Monaghan on charges of assault and battery.[2] Further, the jury assessed $13,000 in compensatory damages and $20,000 in punitive damages against the police officers and the City. The City was held liable on the theory of respondeat superior on the state claims.

The defendants presently seek a new trial or a judgment *non obstante veredicto*, charging that the Court erred in:

(1) applying the Pennsylvania statutes of limitations;

(2) failing to apply the doctrine of collateral estoppel to a preliminary state court determination of probable cause;

(3) admitting into evidence the former testimony of a witness at the state criminal trial;

(4) failing to dismiss the charge of malicious prosecution against Officers Dizio and Flite;

(5) failing to dismiss the pendent state claims;

(6) applying the doctrine of respondeat superior to the City on state pendent claims; and,

(7) assessing punitive damages against the City.

Upon examination of the alleged errors, the motion of the defendants for a new trial will be denied, and the defendants' motion for a judgment *non obstante veredicto* will be granted in part and denied in part. The defendants' contentions will be addressed separately.

The defendants have claimed throughout this litigation that the Court erroneously applied the Pennsylvania statutes of limitations. Carpenter filed his complaint on January 9, 1979, which was 23 months and 13 days after his arrest on January 27, 1977. It was also 13 months and 11 days after the final disposition of state criminal proceedings in his favor on November 29, 1977. The defendants argue that the plaintiff's claim of false imprisonment must be merged with the false arrest and malicious prosecution claims, which are governed by a one-year statute of limitations, Pa.Stat. Ann. tit. 12, § 51 (Purdon, 1977), and that all three must be dismissed as not timely brought. They seek a new trial on the assault and battery claim which was timely brought within two years, Pa.Stat.Ann. tit. 12, § 34 (Purdon, 1977). Alternatively, defendants argue that, if the false imprisonment is not merged with the false arrest and the malicious prosecution, all claims must be examined for purposes of the statutes of limitations as separate acts. Under such an analysis, defendants contend that the false arrest and the malicious prosecution claims must be barred as untimely under the one-year limitation period.

Initially, as defendants correctly assert, because 42 U.S.C. § 1983 contains no statute of limitations, "the limitation to be

---

1. In his complaint, the plaintiff alleged that the defendants had deprived him of his civil rights in violation of 42 U.S.C. §§ 1981, 1983, 1985(3), 1986 and the Fourteenth Amendment. In addition, he sought relief based on state pendent claims of false arrest, false imprisonment, malicious prosecution and assault and battery. On May 22, 1979, the Court granted the defendants' motion to dismiss pursuant to Fed.R. Civ.P. 12(b)(6) as to the City with regard to claims based on 42 U.S.C. §§ 1983, 1985(3) and 1986.

2. On December 11, 1979, the defendants' motion for a directed verdict pursuant to Fed.R. Civ.P. 50 was granted by the Court as to the following claims: (1) 42 U.S.C. §§ 1981, 1985 and 1986 as to all defendants; (2) 42 U.S.C. § 1983 as to defendants Feeney and Landis; (3) state pendent claims of malicious prosecution as to defendants Monaghan, Mulvihill, Landis and Feeney; and, (4) state pendent claims for assault and battery, false arrest and false imprisonment as to defendants Feeney and Landis.

applied is that which would be applicable in the courts of the state in which the federal court is sitting had an action seeking similar relief been brought under state law." *Polite v. Diehl,* 507 F.2d 119, 122 (3d Cir. 1977). Under Pennsylvania law, where the alleged causes of action are "inextricably intertwined," all claims flowing from a defendant's conduct may be subsumed under a single limitation period. *Gagliardi v. Lynn,* 446 Pa. 144, 285 A.2d 109 (1971). Pennsylvania law does not, however, mandate that where various claims are so intertwined the court must opt for the *shortest* limitation period. In *Gagliardi v. Lynn, supra,* the leading case on this issue, the court held that in a false imprisonment charge, which is governed by a two-year limitation period, Pa.Stat.Ann. tit. 12, § 31 (Purdon, 1977), the court must apply the one-year false arrest limitation period. This holding rested upon the notion that every false arrest involves some degree of confinement. *Gagliardi v. Lynn, supra* at 148–150, 285 A.2d at 111–112. Similarly, the *Gagliardi* court held:

> By the same token, if the false arrest involved only a touching and no confinement, and we were forced to choose between limitation statutes relating to false arrest and battery, we would opt for the former.

*Id.* at 150, 285 A.2d at 112.

The present case is distinguishable from the factual situation in *Gagliardi.* Here, while Carpenter was being severely beaten by the officers, he was forcibly handcuffed and literally thrown into a police wagon. The assault on Carpenter continued inside the police wagon. The Court finds that it was this act of handcuffing Carpenter and placing him in the police vehicle in the midst of the assault which constituted his arrest.

> An arrest may be accomplished by "any act that indicates an intention to take [a person] into custody and subjects him to the actual control and will of the person making the arrest."

*Commonwealth v. Farley,* 468 Pa. 487, 494, 364 A.2d 299, 302 (1974); *Commonwealth v. Bosurgi,* 411 Pa. 56, 68, 190 A.2d 304, 311 (1968), *quoting* 5 *Am.Jur.2d,* Arrest, § 1 at 695. *Accord United States v. Lampkin,* 464 F.2d 1093, 1095 (3d Cir. 1972). Therefore, defendants had brutally beaten Carpenter prior to, during and following his arrest. Moreover, Carpenter averred that his arrest and subsequent criminal prosecution was an effort by the officers to cover up or justify their unlawful activity of beating and arresting him. This involved far more than the confinement and technical battery necessary to facilitate an arrest as in *Gagliardi.* Clearly, Carpenter's causes of action are interdependent and inextricably intertwined and should be subsumed under a single limitation period. That limitation period should be the two-year limitation period for assault and battery, because that single element pervades every aspect of the case. Pa.Stat.Ann. tit. 12, § 34 (Purdon, 1977). The Court must emphasize that this determination to apply the assault and battery limitation period is not based on the length of that limitation period; rather, it is based solely upon the dominant or pervading cause of action in the group of inextricably intertwined claims—the assault and battery claim.

This case is materially different from that presented in *Polite v. Diehl, supra.* There, the plaintiff had been involved in an automobile accident and was taken to a hospital and placed under arrest for drunken driving. A considerable time later, while in custody at a police station, he was beaten by police officers. The *Polite* court held that, since the assault and battery and the arrest were not inextricably intertwined, a two-year limitation should be applied to the assault and a one-year limitation to the arrest. Similarly, *Lopez v. White,* 443 F.Supp. 556 (E.D.Pa.1977), is not dispositive of the instant action. In *Lopez,* the plaintiffs alleged that they had been subjected to assaults and arrests by various police officers and these assaults and arrests were in furtherance of a conspiracy among the policemen. The plaintiffs had sought relief under § 1983 and under state pendent claims of false arrest, assault and civil conspiracy. The *Lopez* court found that the assaults on the plaintiffs, which

took place prior to their arrests, were separable and, therefore, held that the two torts were governed by different limitation periods. That court also held that the claim of civil conspiracy was governed by the two-year limitation period for assault claims because, although the assaults were not inextricably intertwined with the arrests, they were acts in furtherance of the conspiracy. The acts giving rise to Carpenter's claims here are not sufficiently distinct to impose different limitation periods. Thus, the Court must reject the defendants' argument that it was error not to dismiss the plaintiff's false arrest, false imprisonment and malicious prosecution claims on the basis of the one-year limitation periods.

■ Second, defendants assert that it was error for the Court to deny their pretrial motion for summary judgment based on the theory of collateral estoppel. Defendants claim that Carpenter should have been estopped from litigating his claims stemming from his arrest due to the prior determination of a judge at the state criminal preliminary hearing that probable cause had existed for Carpenter's arrest. The Court finds the defendants' contention to be without merit due to the procedural posture of this case. The issue of collateral estoppel as to the false arrest claims had been previously raised in pretrial proceedings by the defendants and was initially favorably decided by the Court in a grant of summary judgment as to that issue on October 16, 1979. However, on December 11, 1979, the Court vacated that order for what the Court considers to be sound and just reasons. The reasoning for the denial of defendants' assertion that the doctrine of collateral estoppel was applicable to the false arrest claims was based on the decision of *Kauffman v. Moss*, 420 F.2d 1270 (3d Cir. 1970), cited to the Court by the defendants in their motion for summary judgment filed August 20, 1979. In *Kauffman*, the circuit court held that, while the doctrine of collateral estoppel might be applicable in a federal civil rights claim under § 1983 brought subsequent to a state criminal proceeding concerning many of the same factual and legal allegations, it was not applicable because:

Similarly, in the instant case, without examination of the record in the appellant's state trial, the court below could not know whether the veracity of the state's witnesses had been adequately put in issue by appellant nor whether the general verdict of guilty was necessarily based on the acceptance by the jury of the truth of the alleged perjured testimonly [*sic*] so as to permit the state judgment to bar the present claim of perjury. While the case may be appropriate for summary judgment upon consideration of the criminal trial record, it was error to dispose of the complaint by a motion to dismiss on the ground of estoppel.

420 F.2d at 1275, relying upon *Basista v. Weir*, 340 F.2d 74, 81–82 (3d Cir. 1975).

In the present case, the only record of the prior preliminary criminal hearing in state court submitted by defendants, upon which collateral estoppel on the issue of probable cause was requested to be given, was an "Exhibit A" attached to the defendants' motion for summary judgment. Exhibit A constitutes the findings of fact and conclusions of law of the state trial judge at the November 22, 1977, preliminary hearing on the issue of the probable cause for Carpenter's arrest. The certified trial transcript of those proceedings was not submitted by defendants either as an exhibit to their motion for summary judgment on that issue or at the time of trial. The Court's notes indicate the reason for that failure, as communicated to the Court by counsel for defendants, was that the transcript had been lost or misplaced. In any event, it did not become part of the record and, without the benefit of that certified transcript, this Court could not and cannot make a determination as to the collateral estoppel effect that testimony might provide to these federal proceedings. The state trial judge's findings of fact and conclusions of law indicate that only Officers Flite and Dizio testified at that preliminary hearing. In the present federal civil rights action, Carpenter alleged that the arresting and complaining officers, Flite and Dizio, falsely swore

to the facts underlying the criminal complaint. The falsehood of their attestation, Carpenter claimed, was that their version of the factual events preceding Carpenter's arrest was fabricated and totally untrue. Therefore, Carpenter claimed, the arrest was without probable cause and constituted a false arrest. In that light, this Court did not know, based on the incomplete state court record, as the *Kauffman* court did not know, "whether the veracity of the state's witnesses (the police officers) had been adequately put in issue . . . ." 420 F.2d at 1275. This could have been accomplished either through a thorough cross-examination of the officers by counsel for Carpenter, or by the testimony of Carpenter as to his version of the facts preceding his arrest, or by the testimony of his witnesses or of the other police officers who were on the scene of the incident. The findings of fact and conclusions of law convey to this Court none of those important factors which heavily bear upon the fullness and fairness of the prior criminal preliminary proceedings concerning the issue of whether probable cause or adequate factual basis existed for the arrest. That issue, at the heart of Carpenter's false arrest and § 1983 claims, must have been fully and fairly litigated for collateral estoppel effect to be justly accorded in this federal civil rights action. This standard of a full and fair opportunity has just recently been reemphasized by the United States Supreme Court in the case of *Allen v. McCurry,* —— U.S. ——, —— n.2, —— n.7, ——–—— n.18, 101 S.Ct. 411, 414 n.2, 415 n.7, 419 n.18, 66 L.Ed.2d 308 (1980).[3]

The defendants also claim that the admission into evidence of the state court criminal proceedings testimony of plaintiff's witness Robert Kofroth ("Kofroth") was in error. Kofroth was an eyewitness to the events which took place on the evening of January 27, 1977; therefore, he was a key figure in the plaintiff's case. Fed.R. Evid. 804(b)(1)[4] provides for the introduction of former testimony into evidence where the declarant is unavailable and the party against whom the testimony is being offered has had an opportunity and similar motive to examine the declarant. Fed.R. Evid. 804(a)(5) defines the applicable standard of unavailability. The declarant must be "absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means." The Court finds that, under the requisite good faith standard, *Barber v. Page,* 390 U.S. 719, 724–725, 88 S.Ct. 1318, 1321–1322, 20 L.Ed.2d 255 (1968), the plaintiff has met this burden. There was a period of over a year between the end of the plaintiff's state criminal trial in which Kofroth had testified and the institution of this civil rights suit. Carpenter's attorney had sent numerous letters, certified and uncertified, to Kofroth's last known address (two were sent in January, 1979; one in August, 1979; and one in September, 1979). Numerous phone calls were attempted to that address. Carpenter had personally visited Kofroth's last known address and questioned a neighbor as to his whereabouts. He checked Kofroth's former place of business where he suspected that

---

**3.** The Court also notes that the defendants were not prejudiced by the Court vacating its original grant of summary judgment on this issue as the defendants allege. The original Order was not issued until October 16, 1979, more than nine months after the complaint was filed. While the Order was vacated for what the Court believes to be sound and just reasons prior to trial on December 11, 1979, this could not have seriously affected defendants' trial preparation. The issue of false arrest at the heart of that Order involved the same trial witnesses and testimony as that of the assault and battery and the false imprisonment claims which were not affected by the Order.

**4.** Fed.R.Evid. 804(b)(1) provides:

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

the witness may be working. Carpenter or his counsel could not have reasonably done more under Fed.R.Evid. 804(b)(1).

In addition, the Court finds that a similar "community of interests" for examining this witness existed in both the prior criminal proceedings and this civil action. *Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179, 1185 (3d Cir. 1978). In the state criminal trial, Carpenter raised the issue of self-defense to combat charges of assault and battery and denied charges of robbery and resisting arrest. In this civil action, Carpenter alleges that he acted in self-defense, believing that he was about to be mugged; therefore, there was no probable cause for his arrest and the use of force to subdue him. Thus, Kofroth's eyewitness account of the confrontation between Carpenter and the police officers was essential to Carpenter's defense in the state criminal trial and in this civil rights suit. Therefore, it was critical to discredit Kofroth's eyewitness testimony in both proceedings. The district attorney had vigorously cross-examined this witness attempting to discredit him. The City Solicitor in this case would have had the same motive and addressed the identical issues through its cross-examination of Kofroth. With the same issues, motivation for examination and parties, the testimony of Kofroth was properly admitted into evidence. *See Lloyd, supra* at 1187.

■ The defendants' fourth contention is that the Court erred in not dismissing the malicious prosecution claim against the individual officers due to this Court's prior decision in *Everett v. City of Chester*, 391 F.Supp. 26 (E.D.Pa.1975). In that case, this Court did indeed find that only the district attorney, and not the individual police officers, was responsible for the indictment and ultimate prosecution of plaintiffs claiming malicious prosecution. Subsequent to *Everett*, however, the Court of Appeals for the Third Circuit in *Hazo v. Geltz*, 537 F.2d 747, 751 (3d Cir. 1976), found that where a deputy sheriff may have abused state court procedure he was not absolutely immune from suit under § 1983. In the present case, like *Hazo*, Carpenter charged that the officers

did not act in good faith in instituting the prosecution against him. He alleged that the defendants presented the case in bad faith to the district attorney, who in turn acted upon their report, in an effort to cover up their unlawful activities. This is not a situation where a private citizen is initiating a criminal action, *see Dellums v. Powell*, 566 F.2d 167 at 192 n.72 (D.C.Cir. 1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), *rehearing denied*, 439 U.S. 886, 99 S.Ct. 234, 58 L.Ed.2d 201 (1978). Rather, this is a case of police officers abusing the judicial process by on their own initiative and in bad faith commencing a criminal prosecution against a private citizen. If he were unable to bring this action against the officers, Carpenter would never have an opportunity to redress his claim of malicious prosecution, because the district attorney is cloaked with an absolute immunity for nonadministrative functions. *Hazo, supra* at 750. Under *Hazo*, law enforcement officers are afforded only a good faith immunity; therefore, the issue of malicious prosecution was properly tried. *See also* N.T. 5–84, 85.

■ The defendants further assert that *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), requires all pendent state claims against the City to be dismissed for lack of jurisdiction. In *Aldinger*, the court lacked jurisdiction over a municipality for at the time, under *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), a municipality was not a "person" under § 1983. Having no requisite original federal jurisdiction over the municipality, the *Aldinger* Court was unable to entertain pendent state claims against the municipality. In the present case, Carpenter's complaint alleged violations under 42 U.S.C. § 1983 against the City, now possible under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and under the Fourteenth Amendment. Thus, this Court had the requisite original federal jurisdiction over the City under 28 U.S.C. §§ 1343, 1331. While the § 1983 claim was eventually dismissed by the

Court because a *Monell* "policy" was not shown, the claim based on the Fourteenth Amendment remained. The United States Court of Appeals for the Third Circuit has clearly and repeatedly established that a federal court may proceed to try state pendent claims prior to determining whether the Fourteenth Amendment claims constitute a cause of action. *Gagliardi v. Flint*, 564 F.2d 112 (3d Cir. 1977); *Mahone v. Waddle*, 564 F.2d 1018 (3d Cir. 1977).

> *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), holds that a federal court may, and indeed usually should, decide pendent, nonconstitutional claims if by doing so the court can avoid the decision of difficult constitutional issues. This is true even if the pendent claims standing alone would be beyond the jurisdiction of the federal court. 415 U.S. [528] at 546–47 & nn.12–13, 94 S.Ct. 1372 [at 1383–1384 & nn.12–13, 39 L.Ed.2d 577]. The only requirement for this exercise of pendent jurisdiction over state law claims is that the federal constitutional claims herein asserted not be so insubstantial as to be incapable of supporting federal jurisdiction.

*Gagliardi v. Flint, supra* at 114.

■ The defendants next contend that the City could not be assessed any damages based upon state pendent claims under the theory of respondeat superior. In *Milburn v. Girard*, 441 F.Supp. 184 (E.D.Pa.1977), where federal jurisdiction was based upon the Civil Rights Act of 1966, 42 U.S.C. § 1981, the court held that the City of Philadelphia could be held liable on the theory of respondeat superior for state pendent claims of assault and false imprisonment.[5] *See also Croswell v. O'Hara*, 443 F.Supp. 895, 898 (E.D.Pa.1978).

Finally, the City contends that the imposition of punitive damages against it was in error. For the following reasons, the motion for judgment *non obstante veredicto* will be granted as to that claim of error and the Court will vacate that part of the Civil Judgment Order of December 14, 1979, which assesses punitive damages against the City. Punitive damages will, therefore, be assessed only against the defendant police officers named in that Order.

■ The standard rule is that punitive damages are not available against an employer, including a municipality as an employer, based solely on a theory of vicarious responsibility for the acts of its employees. However, there are several notable exceptions to that general rule. *See Restatement (Second) of Torts*, § 909 (1977); *Restatement (Second) of Agency*, § 2127C (1957). *See also Hennigan v. Atlantic Refining Co.*, 282 F.Supp. 667, 683–684 (E.D. Pa.1967), *aff'd*, 400 F.2d 857 (3d Cir. 1968); *Funk v. Kerbaugh*, 222 Pa. 18, 70 A. 953 (1908). *See generally Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1276–1277, 1277–1278 nn.15–16, 1279 (3d Cir. 1979); *Cochetti v. Desmond*, 572 F.2d 102, 105–106 (3d Cir. 1978); 22 *Am.Jur.2d* [Damages], §§ 258–259 (1965).

These exceptions have been applied in a variety of factual contexts, including civil rights suits, *Mitchell v. Chester County Farms Prison*, 426 F.Supp. 271, 274–275 (E.D.Pa.1976); *see Sostre v. McGinnis*, 442 F.2d 178, 204–205 (2d Cir. 1971), and in cases claiming police brutality or misconduct, *see Young v. City of Des Moines*, 262 N.W.2d 612, 621–622 (Iowa 1978).

■ However, the procedural posture of the present case precludes the application of any one of these exceptions to the general rule. The plaintiff, in his points for charge, only requested the Court to make the following general charge as to the issue of punitive damages:

> You may also decide whether the plaintiff is entitled to the award of any punitive damages. The function of punitive damages is to punish the defendant for malicious conduct and to deter similar conduct by others. Whether you decide to award any punitive damages should be based on whether you find that the defendants have engaged in one of the fol-

---

5. The *Milburn* court did not, however, have occasion to reach the issue of actually assessing punitive damages, for the jury had found in favor of the defendants.

lowing three things: (1) willful or malicious violations of the plaintiff's constitutional rights; (2) intentional acts by the defendants in gross disregard of the plaintiff's constitutional rights. If you find that they have done one of those things, then you should award punitive damages.

Plaintiff's Points for Charge, ¶ 29.

Carpenter made no request for a charge as to any of the above exceptions to the general rule which might possibly have allowed an assessment of punitive damages against the City. Furthermore, plaintiff's counsel, in his closing argument to the jury, did not raise any of the above exceptions nor did he attempt to fit the facts of the case into any one of the exceptions [N.T. 5–109]. Finally, plaintiff's counsel made no request for such a charge either prior to the charge being given by the Court [N.T. 5–71, 77 (the Court stated, "29 affirmed. That will probably be read about verbatim.") or at the side-bar conference following the Court's charge to the jury [N.T. 5–200 to 204]. Therefore, because it was not requested and because it was not raised or argued, the Court did not charge the jury as to the possible exceptions to the general rule concerning the assessment of punitive damages against an employer for the acts of its employees [N.T. 5–180]. *See Markowitz Bros., Inc. v. Fox-Greenwald Sheet Metal Co.*, 399 F.2d 588, 590 (D.C.Cir.1968); *Dirring v. U. S.*, 328 F.2d 512, 515 (1st Cir. 1964). The failure of the Court *sua sponte* to give a more precise instruction on the award of punitive damages was not error. *Gray v. Shell Oil Company*, 469 F.2d 742, 752 (9th Cir. 1972).

■■■ Based on that procedural posture, when the jury was submitted interrogatories requesting the amount, if any, of punitive damages that should be awarded to the plaintiff, error was committed based on the following instruction that was given to the jury:

The plaintiff has claimed damages against the individual defendants and the City of Philadelphia is also named as a party. If you find that the plaintiff re-

covers on the State claims, automatically the City will be responsible together with the defendants because they were in the employ of the City when the offense occurred. But by reason of the application of certain provisions of law if you find there is liability under the Federal claim, the City will not be responsible. That's not [on the] interrogatories. That will be the automatic manner in which the Court would take that matter up when it is finished. We would look at your verdict and decide that. But you should know that if you find against any defendant, any defendant or defendants, on the State claim, the City, their employer, will be responsible for the payment together with the individual. The plaintiff can only recover once, but the plaintiff can recover against either the City or the defendant that you find damages against.

N.T. 5–165 to 166. Therefore, the jury's assessment of punitive damages against the defendants which was reflected in the Court's Judgment Order of December 14, 1979, was an error as a matter of law. The error was committed because the jury was not instructed as to any available exceptions to the general rule concerning the assessment of damages against an employer, but was instructed that an assessment of punitive damages against the defendant officers would be an assessment against the City without more. As a result, the jury's verdict assessing punitive damages against the City as well as the defendant police officers could not have been based on any definable legal standard as applied to the facts of the case, because none was charged. *Cf. Fountila v. Carter*, 571 F.2d 487, 494 (9th Cir. 1978). *See also Chuy, supra* at 1278–1279.

Therefore, the Court will vacate its December 14, 1979, Judgment Order but only to the extent that punitive damages shall not be assessed against the City. The assessment of punitive damages against the defendant police officers named in that Order will remain in full force and effect.

The defendants raised various other minor claims which the Court finds to be without merit.[6]

6. Defendants claim the Court erred in not instructing the jury that the City may not be held liable for damages if it acted in good faith. Defendants failed, however, to request such an instruction in their proposed jury instructions and interrogatories and did not raise the issue at trial.

Defendants also argue that the Court erred in charging the jury that if the arrest was improper they could find malicious prosecution. The Court clarified the concept of malicious prosecution when it instructed that "to advance charges which are unfounded, for which there is no probable cause to believe that they exist, is the only basis upon which the charge of malicious prosecution could result." [N.T. 5–177.]

Defendants also claim that their proposed jury instruction number 25 was improperly rejected. While the Court did not accept the precise language submitted by defendants, it did extensively and sufficiently address the issue of the use of reasonable force by police officers to accomplish an arrest. *See* N.T. 5–151 to 157.

Finally, defendants claim there was insufficient evidence to support a jury verdict for the plaintiff. Both sides presented ample evidence for their respective claims and the issue was ultimately one of credibility, which is within the province of the jury and whose finding the Court finds to be supported by the evidence presented.