Mary P. MAXWELL,
Plaintiff-Appellant,

v.

CITY OF SPRINGFIELD, Missouri, d/b/a City Utilities of Springfield, Missouri, and Kenneth L. Debow, Defendants-Respondents.

No. 13648.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 2, 1986.

Motion for Rehearing or Transfer
Denied Jan. 22, 1986.

Application to Transfer Denied
March 25, 1986.

James W. Newberry, Schroff, Glass & Newberry, P.C., Springfield, for plaintiff-appellant.

Jerry L. Reynolds, Darrell L. Moore, Jerry L. Reynolds and Associates, Springfield, for defendants-respondents.

HOGAN, Presiding Judge.

This action arose out of an intersectional collision between plaintiff Mary Maxwell's vehicle and a city-owned bus in the intersection of Campbell and Division Streets in Springfield, Missouri. The intersection is controlled by an electric signal. A good deal of evidence was received by the trial court, but in the final analysis the dispositive issue of fact was "who had the green light" and plaintiff submitted her case upon defendants' violation of the traffic signal in the form required by MAI 17.01. A jury found the issues for the defendants and against the plaintiff. Judgment was entered accordingly. Plaintiff has appealed, tendering five assignments of error. In the view we take of this appeal, it will only be necessary to consider Points I and II advanced by the plaintiff. We reverse and remand, avoiding collateral and tangential questions to the extent possible.

This action was commenced April 21, 1982. Defendant Debow, the driver of the bus, was joined as a defendant and service of process was had upon him April 22, 1982. On May 28, 1982, the cause was voluntarily dismissed by plaintiff as to defendant Debow. The deposition of one Henry Worcester was filed August 29, 1983. On August 30, 1983, plaintiff, with leave of court, filed a second amended petition. Debow was again joined as a defendant, and was again served with process.

On October 17, 1983, counsel for defendants appeared at a pretrial conference to present "objections for each party" pertaining to the deposition given by Mr. Worcester. The trial court read the deposition and ruled on defendants' objections thereto. The deposition was videotaped, but that fact is not material to this appeal. On the second day of the trial, counsel for defendants moved to limit the use of the deposition to the defendant city on the ground that Debow was not a party when

the deposition was taken. Some authority was cited and defendants' counsel insisted on a ruling. Finally, the trial court orally instructed the jury that the Worcester deposition would be received in evidence against defendant city, but not against defendant Debow.

Two or three facts must be borne in mind. Worcester was apparently the only witness to the accident, other than the plaintiff and Debow. Plaintiff was severely and permanently injured in the accident; her own evidence established that she had sustained a brain injury and her memory was impaired. At the time the objection to use of the deposition was made, defendants had admitted Debow's agency.

■ As presented to this court, the question is whether, in the circumstances, the videotaped deposition taken when Debow was not a party and without notice to him, was properly limited. One general rule, firmly established, is that when evidence is admissible for one purpose or upon one issue but would be improper for other purposes and upon other issues, it should be received. The opponent then has a right to an instruction, if he should request it, limiting the extent to which and the purpose for which the jury may consider such evidence. *State ex rel. Kansas City Public Service Co. v. Shain,* 345 Mo. 543, 549, 134 S.W.2d 58, 61[3] (1939); *Martin v. Yeoham,* 419 S.W.2d 937, 949–50 (Mo.App.1967). This rule is applicable to depositions and answers to interrogatories which are admissible against one defendant but not against the other. *Pyles v. Bos Lines, Incorporated,* 427 S.W.2d 790, 792[2–4] (Mo.App.1968); *Millspaugh v. Missouri Pac. Ry. Co.,* 138 Mo.App. 31, 33, 119 S.W. 993, 994 (Mo.App. 1909).

■ The basic rule of admissibility with which we are concerned is that a deposition taken at a time when a person is not a party to an action cannot be used against him after he has been made a party, unless he was in privity with him who was already a party. *First National Bank of St. Petersburg v. Switzer,* 277 S.W.2d 689, 691 (Mo.App.1955). The law has been such for many years, *Hendricks v. Calloway,* 211 Mo. 536, 558–59, 111 S.W. 60, 66 (1908), but is at the present time subject to exceptions. Commonly the admission of depositions against one not a party when the deposition was taken is governed by a rule or statute. Mo.R.Civ.P. 57.07(a) provides, in applicable part:

"At the trial ... any part or all of a deposition, *so far as admissible under the rules of evidence applied as though the witness were then present and testifying,* may be used against any party who was present or represented at the taking of the deposition or who had proper notice thereof ...." (Our emphasis.)

■ However, and contrary to defendant's position, this rule like the cognate federal rule does not change the substantive law; it is merely a procedural rule. *Kunzler v. Estate of Kunzler,* 598 S.W.2d 139, 145[4] (Mo.banc 1980); see also *Breeding v. Dodson Trailer Repair,* 679 S.W.2d 281, 286[8, 9] (Mo. banc 1984); *Hewitt v. Hutter,* 432 F.Supp. 795, 799 (W.D.Va. 1977) (indicating federal rules of evidence, not the federal rules of procedure, are controlling).

■ Admissibility of the deposition of one not a party is governed by principles similar to those which govern the admissibility of testimony taken at a former hearing or in another action. McCormick, Evidence § 256, p. 617, n. 23 (2d ed. 1972). The leading case on the subject in this jurisdiction is *Bartlett v. Kansas City Public Service Co.,* 349 Mo. 13, 160 S.W.2d 740, 142 A.L.R. 666 (1942). In that case Bartlett and his wife sued the defendant for personal injuries and loss of consortium. At that time, joinder of the two causes of action was not mandatory. The action for loss of consortium was tried first. Thereafter, Mrs. Bartlett offered in evidence two depositions which had been taken and used in her husband's action. The witnesses lived out of state, and were therefore "unavailable." In an unusually penetrating analysis, the court ruled that if testimony received at a former trial is to be received

at a second hearing, the issues must be the same, because:

"If the matters at issue in the subsequent case were only collaterally and remotely involved in the former case there would be no reason to fully and carefully cross-examine as to such points at the time when the witness was available for cross-examination. Hence no real opportunity for cross-examination is had and the testimony offered in the subsequent trial is but little different than a mere ex parte affidavit. [Citation omitted.]"

Id., 349 Mo. at 17, 160 S.W.2d at 743, 142 A.L.R. at 670. The court went on to discuss and discard the notion that the parties to the different actions must be identical, and continued:

"It is said to be sufficient if the party-opponent in the subsequent case is in privity with the party-opponent in the former case. It is necessary, however, to inquire what is meant by privity as the term is used in this rule. It is sometimes insisted that the term is here used with the same connotation employed in the law of property. In Wigmore on Evidence, 3d Ed., Vol. 5, Sec. 1388, such a construction is argued forcefully against.... There is nothing in the mere fact of legal privity between the two parties opponent which makes it certain that the cross-examination in the former case will be as thorough and effective as cross-examination in the second case would have been. The only reason for assuming that cross-examination in the former case will be sufficiently effective is that the interest of the party-opponent in such case is identical with the interest of the party-opponent in the subsequent case and that his motive for adequate cross-examination is therefore the same as the motive of the second party-opponent would have been. After all the true test is one of identity of interest and not of privity as that term is used in the law of property."

Id., 349 Mo. at 20, 160 S.W.2d at 745, 142 A.L.R. at 672. The elusive phrase, no matter the discussion to which one looks, is "identity of interest," or in Dean Wigmore's statement of principle, "the same interest and motive." 5 J. Wigmore, Evidence § 1388, p. 111 (Chadbourn rev. 1974). Our Supreme Court clarified the meaning of such phrases by its opinion in *Bartlett,* thus:

"[9] In the instant case there was not only clearly an identity of issues but there was a complete identity of interest between Mr. Bartlett and his wife. She could recover in this case only by showing primary negligence of the defendant in the alleged sudden forward movement of the bus, and he could recover in the former case only by showing the same identical facts. The two witnesses in the former trial testified to the nonexistence of these facts. It was to Mr. Bartlett's interest just as much as to his wife's to demonstrate, if possible, any falsity or mistake in this evidence...."

*Bartlett,* 349 Mo. at 21, 160 S.W.2d at 745, 142 A.L.R. at 673. The court went on to note that both the Bartletts had the same attorney. And, in *Bartlett* the court demonstrated it was not adopting a new rule of law by citing *Harrell v. Quincy, Omaha & Kansas City R. Co.,* 186 S.W. 677 (Mo. banc 1916), which incidentally shows adherence to Dean Wigmore's views nearly 70 years ago. What these cases show is that the phrase "identity of interest" as used in this rule means that each party opponent against whom the deposition is offered must have had as much reason to cross-examine the witness as the other, not that they must have the same motive, which would require the same self-serving reason. See *Harrell, supra,* 186 S.W. at 680[7].

What we have been trying to say was summed up by Professors Wright and Miller in 1970 thus:

"Under the influence of Dean Wigmore, the courts have come increasingly to recognize that the real test is whether the former testimony was given upon such an issue that the party-opponent in that case had the same interest and motive in his cross-examination that the present opponent now has. On this view

a deposition may even be offered against one who was not a party to the earlier action if there were parties to it who had the same interest in cross-examination as the present party has."

8 C. Wright & A. Miller, Federal Practice and Procedure § 2150, p. 469 (1970).

■■■ In our view, and admittedly at some distance, it is clear that defendant Debow had as much interest as the corporate defendant in disproving the sole matter at issue: Which party violated the traffic signal? Absolute identity of parties is not required, *Bartlett*, 349 Mo. at 20, 160 S.W.2d at 745[7], 146 A.L.R. at 672, and in any event the parties admittedly stood in the relation of master and servant. There is no reason to believe that cross-examination and impeachment would have been more searching and thorough on behalf of Debow than it was on behalf of defendant City Utilities. Plaintiff's injuries traceable to the trauma of the collision were extremely severe; the corporate defendant's "exposure" was extensive. As defendant Debow's immediate supervisor testified, a driver who causes serious injury is subject to being "evaluated" and perhaps discharged. With deference to the trial court, whose judgment we respect, we are convinced that the deposition of witness Worcester was undoubtedly admissible against both defendants, and the court erred in instructing the jury to the contrary. We have the view that the defendants' motion to limit the deposition was impermissibly tardy. In *Breeding*, 679 S.W.2d 286, our Supreme Court suggested that objections to the use of a deposition should be made by motion to suppress as soon as it becomes apparent to the objecting party that the deposition will likely be impermissibly used. The rejoinder of Debow two days after the deposition was filed certainly should have indicated to defendants that plaintiff might seek to use the deposition upon trial. Objection was not raised as soon as the intended use of the deposition became apparent nor at any of the several pretrial conferences which were held.

■■ We would, however, make it clear that we base our reversal and remand upon what we conceive to be an error of law, not an abuse of discretion in refusing to receive admissible evidence. To forestall, to the extent possible, any objection that the verdict, to the extent it exonerates the master, should stand because the error affected only defendant Debow, we note that this case was pleaded and submitted wholly upon the "respondeat superior" doctrine. Under this doctrine, the master's liability is secondary and derivative, the servant's primary, and absent any delict of the master other than the servant, the exoneration of the servant removes the foundation upon which to impute negligence to the master. *State ex rel. Shell Petroleum Corporation v. Hostetter*, 348 Mo. 841, 848–49, 156 S.W.2d 673, 676–77 (banc 1941). Therefore, the binding effect of a judgment holding or exonerating the master upon a finding for or against the servant presupposes that there has been a correct trial of the question of the servant's negligence on the merits and that such verdict is not attributable to, or brought about by, erroneous instructions as to the law concerning the servant's negligence. *Stith v. J.J. Newberry Co.*, 336 Mo. 467, 491, 79 S.W.2d 447, 459 (1934). Inasmuch as the limiting instruction erroneously prevented the jury from considering the servant's negligence, the judgment must be reversed and reversed against both defendants.

We must in fairness say that we have rarely seen a witness more thoroughly impeached than Worcester. However, he did testify unequivocally that as the plaintiff approached and drove into the intersection, her speed was about "20, 25 miles an hour," and that the signal was "green" as plaintiff entered the intersection. Worcester's testimony was that the left front of the defendants' bus hit the door of the truck, right door. His testimony, as far as we can determine, is consistent with the physical facts. As our Supreme Court noted in passing in *Hoene v. Associated Dry Goods Corporation*, 487 S.W.2d 479, 484 (Mo.1972), it is the privilege of the jury

to believe any witness, or as that court has said many times and at length, the jury are the sole judges of the credibility of a witness and the weight to be given his testimony. *Mayer v. Orf,* 404 S.W.2d 733 (Mo. 1966). It cannot be said that Worcester's testimony was inherently incredible, and we reiterate and emphasize that plaintiff, as a consequence of her injuries, sustained what a physician called a "syndrome in which a person loses part of [his] mental faculties due to [an] injury." There were, apparently, no witnesses to the accident other than Worcester. For this reason, if for no other, this court has attached great importance to the excluded testimony.

The plaintiff also complains that there was no evidentiary basis for the giving of Instruction No. 9, by which plaintiff's contributory negligence was submitted. Instruction No. 9 read as follows:

"Your verdict must be for defendants if you believe:

First, either:

plaintiff drove at an excessive speed, or

plaintiff violated the traffic signal, and

Second, plaintiff, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained."

Assuming arguendo that this point was sufficiently preserved in the trial court, we find no merit in the assignment of error. Defendant Debow testified that immediately before the collision, he looked to his left and got a "glimpse" of the plaintiff's vehicle. Debow testified that it was "moving fast"; in part he could tell plaintiff was speeding from "how hard she hit me." In fact, the impact "[threw Debow] out of the seat." Debow estimated that plaintiff was going about 45 miles per hour at the time of the collision. There was evidence that the controlled speed, or "speed limit" at this point on Division Street—the street on which plaintiff was traveling west—was 30 miles per hour.

In determining whether there was evidentiary support for the giving of Instruction No. 9, this court must take the defendants' evidence as being true and give the defendants the benefit of all reasonable inferences to be drawn from that evidence. *Vaeth v. Gegg,* 486 S.W.2d 625, 628–29 (Mo.1972). In *Vaeth,* the court pointed out, among other things that estimates of speed, even though they are based upon extremely brief observations, may justify a submission of excessive speed if the force of the impact, the damage to the vehicles and the other physical facts permit an inference that the plaintiff was traveling at an excessive rate of speed. Id. at 627; *Hamilton v. Slover,* 440 S.W.2d 947, 956 (Mo.1969). Put differently, the defendants were not relegated to direct proof of plaintiff's acts as contributory negligence, but were entitled to rely on circumstances which were of such a nature and so related that excessive speed might reasonably be inferred. The impact in this case was such as to split the cab of plaintiff's pickup truck from the bed. We are convinced, without detailing the evidence, that there was a basis for the submission of excessive speed as contributory negligence.

Other points of error have been preserved and presented for review. Inasmuch as the assigned errors, if any, are such as might not recur upon retrial, it would serve no purpose to consider these points. For the error noted, the judgment is reversed and the cause is remanded.

PREWITT, C.J., and CROW, J., concur.

MAUS, J., dissents.

MAUS, Judge, dissenting.

I must respectfully dissent. The judgment is reversed because the trial court instructed the jury to disregard the deposition testimony of Worcester in determining the liability of defendant Debow. So far as defendant Debow was concerned, that deposition testimony was hearsay evidence. I believe the admonition of the trial court was required and was not error.

It is significant this deposition was offered by the plaintiff against the defendant Debow who was not a party when the deposition was taken and had no notice of and did not participate in the taking of that deposition. There is a fundamental reason to prohibit the use of deposition testimony or prior trial testimony against one not a party. That reason is not necessarily applicable to the use of such testimony in support of one not a party but against one who was a party to the deposition or prior trial. See, McCormick on Evidence, § 256 (E. Cleary 3d ed. 1984); 11 J. Moore, Moore's Federal Practice, § 804.04[2] (2d ed. 1985).

The fundamental limitation against the use of such hearsay evidence was clearly and tersely stated. "It ought to require no citation of authority to sustain the proposition that a deposition cannot be read against one not a party to a suit at the time it was taken." Cf. *Hendricks v. Calloway*, 211 Mo. 536, 558, 111 S.W. 60, 66 (1908). Generally, that limitation was eased to permit the use of deposition testimony or prior trial testimony against one who was not a party at the time of that testimony but was in "privity" with one who was a party at that time. Cf. *First National Bank of St. Petersburg v. Switzer*, 277 S.W.2d 689 (Mo. App.1955). As so used, the term privity was generally held to mean mutual or successive relationships in a res or property. See 11 J. Moore, supra, § 804.04[2].

However, as noted in the majority opinion, in recent years a broader limitation on the use of such testimony has been advocated. E.g., 5 J.H. Wigmore, Evidence, § 1388, (Chadbourn rev. 1974); McCormick on Evidence, supra. The limitation so advocated has been based upon the proposition "the requirement of identity of parties is after all only an incident or corollary of the requirement as to identity of issue." 5 J.H. Wigmore, supra, at 111. Or, put another way, "[i]dentity of interest in the sense of motive, rather than technical identity of cause of action or title, is the test." McCormick on Evidence, supra, at 765. The limitation so advocated has received various expressions. Generally stated, such hearsay evidence is to be admitted if

the adverse party on the prior trial or at the deposition had the opportunity for cross-examination and a motive to do so similar to that which the adverse party has in the trial in which the evidence is offered. See, *Condas v. Condas*, 618 P.2d 491 (Utah 1980); 5 J.H. Wigmore, supra, § 1387; McCormick on Evidence, supra, § 257. The broader limitation has not been accepted without question. "Approval of the broad proposition taken by Wigmore—that is, that the true test of admissibility is whether there was adequate opportunity for cross-examination on the issue affecting the present party—was specifically denied in (citations omitted)." Annot., Former Testimony—Identity of Parties, 142 A.L.R. 673, 700 (1943). Also see Annot., Deposition—Admission in Evidence, 4 A.L. R.3d 1075 (1965). A clear statement of the opposing views is found in *Insul-Wool Insulation Corp. v. Home Insulation*, 176 F.2d 502 (10th Cir.1949).

In theory, the scholarly basis for the broader limitation may be sound. However, in my opinion it does not recognize reality or individual rights.

Such hearsay testimony in question is not a spontaneous statement. Often it will be given by a party. Almost without exception the witness will have been interviewed by the proponent and known to be favorable to him. Depositions are generally taken for discovery, not the presentation of evidence, and the incentive for cross-examination is lacking.

Opportunity and motive do not assure a proper and effective cross-examination. It has often and truly been said that cross-examination is an art. Depending upon the attorney, it can serve to emphasize and enhance the direct testimony of the witness or it can destroy it. A litigant should be entitled to an attorney of his own choice.

This individual right has been recognized in the adoption of Federal Rule of Evidence 804(b)(1), dealing with the admissibility of former testimony. In discussing that Rule, it has been stated:

"The [House Judiciary] Committee considered that it is generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party. The sole exception to this, in the Committee's view, is when a party's predecessor in interest in a civil action or proceeding had an opportunity and similar motive to examine the witness."

The Senate accepted the House modification.

The Congressional rejection of the Supreme Court's abolition of the traditional identity of parties requirement had the effect of codifying the common law rule as to the identity of those against whom former testimony may be introduced. The "predecessor in interest" rule in civil cases can be given meaning by considering pre-codification law. The relationship between a party and his predecessor in interest is a privity relationship and has been described as follows:

"The term 'privity' denotes mutual or successive relationships to the same rights of property, and privies are distributed into several classes, according to the manner of this relationship. Thus, there are privies in estate, as donor and donee, lessor and lessee, and joint tenants; privies in blood, as heir and ancestor, and co-parceners; privies in representation, as executor and testator, administrator and intestate; privies in law, where the law, without privity of blood or estate, casts the land upon another, as by escheat."

11 J. Moore, supra, § 804.04[2].

The same limitation has been recognized by the Federal Rules of Civil Procedure providing for the use of depositions:

Substitution of parties pursuant to Rule 25 does not affect the right to use depositions previously taken; and when an action has been brought in any court of the United States or of any State and another action involving the same subject matter is afterward brought between the same parties or *their representatives or successors in interest,* all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefor.

Fed.R.Civ.P. 32(a) (emphasis added).

The majority opinion holds a deposition to which a master was a party is admissible against a servant who was not a party. Presumably, a deposition to which a servant is a party will be admissible against a master who was not a party. A master and servant are not in privity, as defined above. Each has separate assets. It is not difficult to visualize circumstances in which a servant's motive and ability to cross-examine are not great. The fact of separate interests of the parties are emphasized by the possibility of indemnification of the master by the servant.

The broad view of admissibility of such hearsay evidence places separate assets and claims beyond the control and responsibility of the owner thereof. That view will make a wide range of hearsay admissible. E.g., in *Lloyd v. American Export Lines, Inc.,* 580 F.2d 1179 (3d Cir.1978), the court in effect negated the "predecessor in interest" requirement Congress placed in Federal Rule of Evidence 804(b)(1). In that case a seaman sought recovery for injuries inflicted upon him by a fellow seaman. A Coast Guard disciplinary proceeding was conducted. The court held the Coast Guard investigating officer to be the claimant's predecessor in interest. Cf. *Complaint of Paducah Towing Co., Inc.,* 692 F.2d 412 (6th Cir.1982). In *Carpenter v. Dizio,* 506 F.Supp. 1117 (E.D.Pa.1981), a district attorney was found to be a predecessor in interest of a city, the defendant in an action under 42 U.S.C.A. § 1983.

The basis for the broad view has also been urged to permit the admission of such hearsay evidence when there is a "substantial" identity of issues. The fundamental weakness in that basis is acknowledged.

Moreover, insistence upon precise identity of issues, which might have some appropriateness if the question were one of res judicata or estoppel by judgment, are

out of place with respect to former testimony where the question is not of binding anyone, but merely of the salvaging, for what it may be worth, of the testimony of a witness not now available in person.

McCormick on Evidence, supra, at 767–68. In reality, the admission of such hearsay may have as conclusive an effect as a judgment. The requirement of privity, as above defined, provides a common or derivative interest in property or a res which is some justification for the admission of such hearsay and limits its consequences. The reason for excluding such hearsay is yet recognized. "Furthermore, fairness requires that a party, such as Exxon, should not be burdened by an inadequate examination conducted by a predecessor in interest. *See generally*, H.R.Rep. No. 650 93rd Cong.2d Sess. (1973) 4 U.S.Code & Admin. News pp. 7051, 7088 (1974)." *Complaint of Paducah Towing Co., Inc.*, supra, at 418.

The disposition of this case is not controlled by *Bartlett v. Kansas City Public Service Co.*, 349 Mo. 13, 160 S.W.2d 740, 142 A.L.R. 666 (1942). In that case the interest of each party was derived from the injury to the wife. Further, that case acknowledged the admission of such testimony to be a matter of procedure. This acknowledgment is peculiarly applicable to a statement by rule of the steps necessary to cause a deposition to be admissible in a pending action. Missouri Rule 57.07(a) expressly provides a deposition "may be used against any party who was present or represented at the taking of the deposition...." Rule 57.07 was not applicable to that decision. In my opinion, that Rule also establishes the trial court did not err. *Buttry v. Sutemeier*, 617 S.W.2d 452 (Mo. App.1981). I would affirm the judgment.