STATE of Missouri, Respondent,

v.

Reginald GRIFFIN, Appellant.

No. 70398.

Supreme Court of Missouri, En Banc.

Feb. 23, 1993.

Craig A. Johnston, Columbia, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

BENTON, Judge.

[After the expiration of time for filing motions for rehearing, the parties discovered that, as the offense was committed in 1983, the procedures of the "current" version of Chapter 565 do not apply. § 565.-001 RSMo 1986. Instead, this case is governed by the "old" version of Chapter 565 contained in RSMo 1978 and RSMo Supp. 1982.

The two parties filed competing writs of prohibition against the trial judge that present alternative theories of the appropriate procedures for resentencing under the 1983 version of Chapter 565. This Court consolidates the two petitions and treats them as motions to recall the mandate. Those motions are sustained; the original opinion in this case, *State v. Griffin*, 818 S.W.2d 278 (Mo. banc 1991), is withdrawn. The opinion is corrected and reissued as follows:]

This case comes before this Court after a long and muddled history in this state's justice system. On July 12, 1983, Reginald Griffin, appellant, and his codefendant Doyle Franks [1] brutally murdered James Bausley while all four men were inmates at the Moberly Training Center for Men. The investigation into this murder was completed by September 13, 1983; but no complaint was filed until January 28, 1987. The trial commenced on January 25, 1988. Mr. Griffin was found guilty of capital murder and sentenced to death. Notice of appeal was filed with this Court on April 11, 1988, less than two weeks after the entry of judgment against Mr. Griffin. This appeal was suspended while Mr. Griffin pursued a motion under Rule 29.15 to vacate his conviction. After several hearings, this motion was overruled on November 3, 1990. Notice of appeal of this motion was filed with this Court on January 22, 1991. Both appeals have been consolidated into the current action.

Appellant's argument to this Court seeks the overturning of his conviction on essentially six grounds. First, appellant claims that the delay between the conclusion of the investigation and the start of his trial violated his Fifth and Sixth Amendment rights. Second, appellant objects to the refusal of the circuit court to grant him a continuance shortly before the trial date. Third, appellant claims that the jury instructions in both phases of the trial were fatally flawed. Fourth, appellant claims

---

1. Another codefendant, Arbary Jackson, was acquitted by a jury in a separate trial.

that he has suffered from ineffective assistance of counsel at all stages of this action. Fifth, appellant claims that the circuit court erred in admitting several pieces of evidence against him in both phases of the trial. Sixth, appellant objects to the acceptance by the judge hearing the motion to vacate conviction of the state's proposed findings of facts and conclusions of law without amendment.

## I. Pretrial Delay

 The appellant claims that his due process rights were infringed by the delay between the end of the state's investigation and the filing of charges with this violation being compounded by his confinement in administrative segregation during part of the period of delay.[2] While the reasons for the delay are understandable and one can feel compassion for the hardships faced by the local prosecutor, the state has the responsibility to the victim, to society, and to the defendants not to allow such delays to happen. Justice is not served by a delay of this type, and such delays should not be tolerated by those responsible for assuring the swift prosecution of criminals in our society.

 The question before this Court, however, is not whether this delay should have happened but rather whether this delay justifies the dismissal of charges against the appellant under the due process clause of the Fifth and Fourteenth Amendments. As both appellant and respondent argued, the test for determining whether pre-indictment delay requires the dismissal of charges is whether 1) the defendant was prejudiced by a pre-indictment delay which 2) was intended by the prosecution to gain a tactical advantage over the defendant. *State v. Scott,* 621 S.W.2d 915, 917 (Mo. 1981). Neither prong was met in this case.

While the appellant claims that some of his key witnesses died during the period between the murder and the trial, the evidence that would have been offered would either have merely been cumulative or was flatly contradicted by the physical evidence. Likewise, both sides attacked the memory of the other side's witnesses due to the long time between the event and the trial. As such, it cannot be said that the appellant was prejudiced by the delay.

Likewise, the reason for the delay cannot be said to be an "intent to gain a tactical advantage." According to the record, when the crime occurred, the prosecuting attorney was the only attorney in the local office. This attorney made the decision to try his capital cases in the order that they arose and to try the cases arising from this incident by himself. Most of the additional delay was caused by personal problems—an accident involving his infant daughter and subsequent serious complications arising from that injury—which finally forced him to turn the case over to the attorney general's office. None of these reasons can be classified as an attempt to gain a tactical advantage.[3] The delay was unfortunate, but it was not malicious. As such,

---

2. This issue was also raised by appellant's co-defendant Doyle Franks in his appeal of his conviction for second degree murder to the Missouri Court of Appeals for the Eastern District, which rejected his claim. *State v. Franks,* 793 S.W.2d 543, 546–47 (Mo.App.1990).

3. Appellant argues that the decision to try the capital cases in the order that they arose was an attempt to gain a tactical advantage. This claim arises from the fact that there were two groups of capital murder cases in this circuit for incidents in the prison in which appellant and his victim were incarcerated. The first group arose from an incident that occurred several weeks before the murder of Mr. Bausley by appellant. For that group of cases, which the local prosecutor wanted to try first, the prosecutor, being inexperienced in capital cases, choose to associate himself with the attorney general's office

and took the second chair on those cases. While there is an advantage gained by this course of action, it is a course of action that this Court urged on all attorneys at that time through DR 6–101(A)(1) of the Code of Professional Responsibility, and still urge through the Comments on Rule 1.1 of the Rules of Professional Conduct. While the local prosecutor should have followed the same procedure for the group of cases arising out of the murder of Mr. Bausley as he did for the other cases (associating himself with the attorney general), it was his sense of duty rather than a search for a tactical advantage that made him want to try this set of cases himself. And, while a delay to gain experience certainly gives some benefit/advantage to a prosecutor, this advantage is not a "tactical" advantage.

there is no justification for dismissing the charges against the appellant.

■ This holding is not affected by the actions of the Department of Corrections. It is a well-established principle of law that the rights of prisoners are subject to the need of a prison to maintain order and security. *See, e.g., O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348–53, 107 S.Ct. 2400, 2404–07, 96 L.Ed.2d 282 (1987); *Turner v. Safley,* 482 U.S. 78, 84–91, 107 S.Ct. 2254, 2259–63, 96 L.Ed.2d 64 (1987); *Hudson v. Palmer,* 468 U.S. 517, 524–28, 104 S.Ct. 3194, 3199–3201, 82 L.Ed.2d 393 (1984); *Pell v. Procunier,* 417 U.S. 817, 822–23, 94 S.Ct. 2800, 2804–05, 41 L.Ed.2d 495 (1974); *Howard v. Pettus,* 745 S.W.2d 821, 822 (Mo.App.1988); *State ex rel. Division of Adult Institutions v. Brackman,* 737 S.W.2d 516, 519 (Mo.App.1987). As such, a prison is entitled to enforce its rules, even when those rules may deal with matters which might also be criminal offenses, without waiting for the filing of charges in court by the local prosecutor. The taking of disciplinary action by the prison does not make the defendant an accused for the purposes of the Sixth Amendment. *Cf. United States v. Gouveia,* 467 U.S. 180, 189–90 & n. 6, 104 S.Ct. 2292, 2298–99 & n. 6,. 81 L.Ed.2d 146 (1984) (Sixth Amendment right to counsel not implicated by administrative segregation, no decision on right to speedy trial). If there were any evidence that administrative segregation had been imposed to hinder the appellant's ability to assist in the preparation of his own defense, there might be a violation of the appellant's rights; but that question does not arise here.

Likewise, nothing else in the record suggests that the appellant had become an accused for the purposes of the Sixth Amendment speedy trial clause during the lengthy period between the offense and the indictment. As such, there are not any Sixth Amendment grounds for dismissing the charges against the appellant. The delay in this case only implicates the due process rights of the appellant; and, as noted above, appellant has failed to show that his due process rights were violated.

## II. Denial of Continuance

■ In most circumstances, the decision to grant a continuance rests in the sound discretion of the trial court. See *State v. Schaal,* 806 S.W.2d 659, 666 (Mo. banc 1991). In this case, the slightly more than eight months given counsel to prepare was adequate. The appellant did not request a continuance until about two weeks before the original trial date, with the written motion for a continuance coming only three days before the second trial date.

With both of these requests occurring six weeks after the time when the trial date was set, the judge was well within his discretion in finding no reason to delay the guilt phase of the trial. In addition, the first request was based in part on a defense preference for a trial date originally set for a codefendant who had since pleaded guilty and in part on a desire to file unspecified new motions after the motion deadline had already passed. The reasons given by appellant for wanting a continuance—both in the original oral motion and in the written motion (and its oral argument)—did not compel the judge to grant a continuance.

Instead, the picture presented by the motions for continuance is a counsel who after eight months is ready for trial but wants more time in the hope that the defense team will find something that will improve their case. The law of this state gives the trial judge the discretion to decide whether or not to grant that time. As such, there was no error in the trial judge's denial of the motion for continuance.

## III. Jury Instructions

Appellant claims that it was error by the trial court to give jury instruction number 4 defining "reasonable doubt," jury instruction number 5 defining the charge of capital murder, jury instruction number 19 addressing general duties of the jury in the sentencing phase, jury instruction number 21 defining nonstatutory aggravating circumstances, and jury instruction number

22 defining mitigating circumstances and for the trial court not to give proposed instruction F, which included the definition of "reasonable doubt," in place of instruction number 19.

■ On the reasonable doubt instruction (number 4), the appellant requests that this Court reconsider its holding in *State v. Antwine*, 743 S.W.2d 51, 62–63 (Mo. banc 1987), in light of the decision of the Supreme Court of the United States in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The charge given in instruction number 4 conforms to the requirements of *Antwine* and MAI–CR2d. Considering the charge as a whole, and comparing it to the Louisiana charge struck down in *Cage*, this Court finds that the charge given in this case clearly requires that the jury find the defendant guilty beyond a reasonable doubt and merely explains that term to the jury, unlike the charge in *Cage*, which equated proof beyond a reasonable doubt with a lower standard. Therefore, the instruction given in this case meets the constitutional requirement that the jury must be instructed that the defendant must be proven guilty beyond a reasonable doubt. As such, this Court reaffirms its holding in *Antwine*.

■ On the capital murder instruction (number 5), appellant seeks "plain error" review. Rule 30.20. The essence of the instruction is to allow the jury to convict appellant of capital murder if it finds beyond a reasonable doubt that appellant Griffin, Mr. Franks, and Mr. Jackson cooperated in the murder of Mr. Bausley. The testimony of Yvonne Mozee, one of the key state's witnesses, demonstrates how the jury could find beyond a reasonable doubt that appellant had acted in concert with his codefendants in the murder of Mr. Bausley without being sure beyond a reasonable doubt which of the three actually stabbed Mr. Bausley. Under these circumstances, as noted in *State v. Dulany*, 781 S.W.2d 52, 54–56 (Mo. banc 1989), such an instruction is perfectly valid.

■ On the general penalty phase instruction (number 19), as with the charge during the guilt phase, the appellant claims that the charge does not adequately instruct the jury on reasonable doubt. While appellant's rejected instruction F more closely resembles the instruction given in MAI–CR3rd, there is no evidence that this error was prejudicial to the appellant. Looking to the charge as a whole, the two subsequent instructions, which cover the finding of statutory and nonstatutory aggravating circumstances (instruction number 20 and instruction number 21), each require that the aggravating circumstances be proved beyond a reasonable doubt.

The main objection to the nonstatutory aggravating circumstance instruction (number 21) is that it includes circumstances for which the only supporting evidence was not admissible. As such, this objection will be deferred until the discussion of the admissibility of the evidence, *infra*.

On the instruction regarding mitigating circumstances (number 22), the appellant objects on the grounds that, as proffered, the charge violates the due process rights of the appellant and, moreover, it was given with a typographical error. On the first objection, the appellant claims that the charge as proffered could result in a juror believing that mitigating circumstances must be found unanimously by the entire jury. This claim was considered and rejected by this Court in *State v. Petary*, 790 S.W.2d 243 (Mo. banc), *cert. denied*, 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990). Respect for precedent compels following *Petary* and rejecting appellant's claim.

The second point need not be discussed in view of the remand for re-sentencing on other grounds.

### IV. *Ineffective Assistance of Counsel*

■ Under *Sanders v. State*, 738 S.W.2d 856 (Mo. banc 1987), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a convicted defendant seeking relief for ineffective assistance of counsel must prove both parts of a two-prong test: 1) that defendant's attorney failed to exercise the skill

and diligence of a reasonably competent attorney; and 2) that the defendant was prejudiced by counsel's ineffectiveness. The record in this case demonstrates that the appellant failed to satisfy either prong.

In the Rule 29.15 motion to vacate conviction filed in the sentencing court, appellant alleged seventy-eight different ways in which his counsel at his preliminary hearing and his trial counsel performed in a manner that was less than perfect. Of these seventy-eight claims, only four against trial counsel, and an additional claim against the counsel who served on the 29.15 motion, were raised before this Court in appellant's brief. The review of the original list by the judge on the 29.15 motion in his findings of facts and conclusions of law portrays the difficult task faced by the defense attorney in a case of this type. The universe of potential witnesses is endless with many being extremely unlikely to cooperate. Unless witnesses come forth on their own or the defendant can provide needed information, a truly effective investigation is improbable. Likewise, strategic decision-making on whom to call, how to impeach opposing witnesses, and what evidence to present is more an art than a science. *Cf. Strickland v. Washington*, 466 U.S. 668, 688–90, 104 S.Ct. 2052, 2064–66, 80 L.Ed.2d 674 (1984). Having the advantage of time and distance, it is easy for attorneys and judges to second-guess those choices. Judging the overall performance of appellant's attorneys with due deference to the findings of the circuit court judge, appellant has not proved that the assistance rendered was incompetent. Likewise, appellant was not prejudiced by the actions of his attorneys.

### V. Evidentiary Questions

Appellant objects to the admission into evidence at his trial of three separate pieces of evidence: the admission, during the guilt phase, of the transcript of the testimony of a witness at his preliminary hearing who died before the actual trial;

the testimony during the penalty phase of a Department of Corrections official about supposedly confidential matters; and the admission of State's Exhibit 20 during the penalty phase. Appellant also objects to the references by the prosecutor to the victim and the victim's family during closing argument of the penalty phase.

Appellant's first claim on an evidentiary question deals with the admissibility at trial of the testimony of a witness at the preliminary hearing who died before the case came to trial. Appellant claims that, as discovery was not completed before the preliminary hearing, the cross-examination conducted at the hearing does not constitute adequate cross-examination. Testimony given at a properly held preliminary hearing satisfies the requirements of the confrontation clause of the Sixth Amendment when the witness is unavailable to testify at trial. *See, e.g., State v. Holt*, 592 S.W.2d 759, 765–67 (Mo. banc 1980). While the scheduling of the preliminary hearing makes it preferable to have live testimony at trial rather than reading into the trial record the transcript of the testimony at the preliminary hearing for the very reason that discovery cannot be completed before such a hearing,[4] the inability of defense counsel to conduct the same cross-examination early in the pretrial process as would be conducted at trial does not mean that the testimony lacks sufficient reliability to admit it for trial. The appellant had the opportunity at the preliminary hearing to confront and cross-examine Mr. Mozee and the opportunity at the trial to present evidence impeaching Mr. Mozee's credibility. As such, the purposes of the confrontation clause of the Sixth Amendment are fulfilled by the preliminary hearing in this case. Therefore, this Court reaffirms its holding in *Holt* and rejects appellant's objection. Likewise, under Rule 22.08, the witness's signature on a copy of the transcript is no longer required; and appellant's objection is rejected.

---

**4.** In fact, one of the many purposes of a preliminary hearing is to enable the two sides to discover some of the evidence that the other side has via the witnesses put on the stand and the exhibits introduced.

Appellant also objects to the testimony of Department of Corrections employee James Steele during the penalty phase regarding statements made by appellant in an intake interview. Appellant objects on two grounds: that no *Miranda* warning was given and that, according to the relevant statutes, this information was confidential and privileged.

■ First, this information was obtained in the context of an intake interview and as such does not meet the requirement in *Miranda* that the questioning be part of "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). As clearly as there is an initial point where a person becomes a suspect in a crime and therefore gains the right to a *Miranda* warning, there is an exit point where a person is no longer a suspect in a crime and thus does not have the right to be warned. On this record, it is clear that these interviews are done for reasons other than gaining evidence to be used against inmates at future trials. As such, the circumstances which make a statement—given as part of a custodial interrogation—"compelled" self-incrimination are not present here.

■ The second ground requires the interpretation of statutes which, though not previously interpreted, have been mostly repealed. Under the common law canons of construction, this Court must harmonize the provisions cited as controlling, § 217.-205, RSMo 1986 (by appellant) and § 217.-075, RSMo 1986 (by respondent). The former provision makes the information gained by Mr. Steele a "confidential" record. The latter provision makes all records of the department, both open and confidential, accessible to a court if relevant to the matters before it. In order to harmonize these two statutes, it appears logical to construe the former statute as intending to keep these matters off the public record but not out of court. As such, this record was admissible in appellant's first sentencing trial and will thus be admissible in his second sentencing trial.

■ This Court now turns to the admission of State's Exhibit 20 during the penalty phase. This exhibit was the record of a conviction of another Reginald Griffin. The exhibit, on its face, is not a conviction of the same Reginald Griffin who was before the court being sentenced. As such, it was irrelevant; and the record in the trial shows the conviction was one of the non-statutory grounds underlying the sentence of death. To uphold this verdict would be manifest injustice. It is also likely that the admission of an incorrect criminal record of a defendant in the penalty phase of a capital crime is not harmless error. *Cf. State v. Degraffenreid*, 477 S.W.2d 57, 61–65 (Mo. banc 1972) (erroneous admission of evidence grounds for reversal). Therefore, the only appropriate course of action in response to this error is to order that the appellant be given a new punishment hearing. § 565.006.3, RSMo Supp.1982.

■ Appellant also claims that the references to the victim by the prosecutor during the closing argument of the penalty phase violated *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), overruled by *Payne v. Tennessee*, — U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). In this case, the references to appellant's victims were vague, general, and brief. Thus they did not violate the *Booth* decision, which applies to "the presence or absence of emotional distress of the victims families, or the victim's personal characteristics," or "emotionally charged opinions as to what conclusions the jury should draw from the evidence...." *Booth*, 482 U.S. at 507, 509, 107 S.Ct. at 2535, 2536.

## VI. Circuit Court's Decision on the Motion to Vacate Conviction

■ For obvious reasons, when a court adopts in its entirety the proposed findings of fact and conclusions of law of one of the parties, there may be a problem with the appearance. The judiciary is not and should not be a rubber-stamp for anyone. *Cf. United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656–57 & n. 4, 84 S.Ct. 1044, 1047–48 & n. 4, 12 L.Ed.2d 12 (1964). However, just as proposed jury instruc-

tions from parties in a case are useful to the court in focusing on the crucial issues in a case, so are proposed findings of fact and conclusions of law in a bench hearing. Given the law of this state and this country on ineffective assistance of counsel, there will be times when the state's proposal will be correct in all details. Based on the evidence in the hearings on the motion to vacate, there is no reason to doubt that the court made its own determination of the actual facts and decided that the state's proposed findings of fact and conclusions of law were correct. As such, though not the best practice, we find no reversible error in the decision of the circuit court on the motion to vacate.

Therefore, the judgments below—both at trial and on postconviction motion—are affirmed with respect to conviction and reversed with respect to sentence. The case is remanded only for a new punishment hearing in accord with this opinion.

All concur.