STATE of Missouri, Respondent,

v.

Terrese D. AARON, Appellant.

No. WD 65362.

Missouri Court of Appeals,
Western District.

Jan. 23, 2007.

Application for Transfer to Supreme Court
Denied Feb. 27, 2007.

Application for Transfer Denied
May 1, 2007.

Margaret Mueller Johnston, Public Defender Office, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Shaun Mackelprang, Office of Attorney General, Jefferson City, for respondent.

RONALD R. HOLLIGER, Judge.

Terrese D. Aaron ("Aaron") appeals his conviction of voluntary manslaughter and armed criminal action following a jury trial. In his sole point on appeal, Aaron argues that the trial court violated his rights under the Confrontation Clause by admitting the preliminary hearing testimony of an unavailable witness. Aaron concedes that under current Missouri law such testimony is admissible,[1] but argues

that the United States Supreme Court decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), alters the analysis required under Missouri law, rendering the evidence admitted in his case inadmissible under the Sixth and Fourteenth Amendments to the United States Constitution and article I, sections 10 and 18(a) of the Missouri Constitution. The judgment of conviction is affirmed.

**Factual and Procedural Background**

This case arises from the fatal shooting of James Miller. On the evening of the shooting, Miller was driving in his car around Mexico, Missouri, with his passenger, Montay Williams. Shortly before midnight, Miller pulled his car over to the side of the road, and a car driven by Sherita Thompson also pulled over, parking a short distance in front of him. Three men got out of the second car: Terrese Aaron, his brother Derrick Aaron, and Lorenzo Miller. James Miller also got out of his car, grabbing a stick out of the back seat. The stick was two to three feet long and approximately the diameter of a broom handle.

As the four men approached one another in the street between the two cars, Thompson remained in the driver's seat of the front car, but Williams got out of Miller's car and spoke with someone she knew in a nearby driveway. An argument ensued in the street, during which James Miller struck Derrick Aaron with the stick he was carrying. While the testimony of the various witnesses differs as to what happened next, there is agreement that at least two guns were then drawn and fired, that James Miller was injured, that the other three men returned to the car they had arrived in, and that Thompson drove them away.

---

**1.** This rule can be traced back to at least 1839. *See Garret v. State,* 6 Mo. 1 (Mo.1839).

With assistance from two passersby, Williams put James Miller back into his car and drove him to the hospital. At the hospital, Sergeant Justin Jobe, who was investigating the shooting, interviewed Williams. Jobe took a statement from Williams in which she described the shooting and surrounding circumstances. That statement recounted, in relevant part:

> Derrick Aaron, Terrese Aaron and Lorenzo Miller got out of the car and were talking to James in the street. I did not hear what they said. I thought they were going to jump James. Derrick and Terrese then pulled out guns and shot James.[2] I heard five or six shots. I then ran towards the house. Derrick, Terrese and Lorenzo got back in the car and left.

Jobe then visited the scene of the shooting and interviewed a neighbor who had witnessed the shooting from a distance. That neighbor described being drawn to her front window by noises outside and seeing four men in her yard and in the street in front of her house. One of the men was sitting on the ground with another standing over him, pointing a gun down toward him. The neighbor then heard shots fired and watched as three men jumped into a car, which drove off.

Jobe then returned to the hospital and spoke with Williams again. At that point, Williams gave a second statement, which recited, in its entirety:

> During the shooting I saw that Derrick and Terrese had guns and were shooting at Jamie. When Jamie fell down Terrese went up to Jamie and was standing over him and shot again. Terrese then started going through Jamie's pockets. I could not tell what they were wearing.

James Miller had five gunshot wounds: one in his abdomen, one through the front of his leg, and three in his buttocks. He died as a result of blood loss caused by the abdominal wound. Derrick and Terrese Aaron, Lorenzo Miller, and Sherita Thompson were all charged with murder in connection with the death of James Miller.

Three months after the shooting, a consolidated preliminary hearing was held seeking to have Terrese Aaron and Lorenzo Miller bound over for trial. At that hearing, the State offered testimony from the local medical examiner and two detectives who had investigated the case. Lorenzo Miller then called Williams to testify on his behalf.

On direct examination, Williams testified consistent with her second statement to Jobe, emphasizing that Lorenzo Miller had no gun. She also testified that James Miller was her boyfriend and that she had asked him to get back in the car, but he ignored her. She testified that she was worried that Lorenzo Miller and the Aarons were going to beat him up because of an earlier altercation between him and Jonathan Aaron, the Aarons' younger brother. She testified that once the shooting began, she ran toward a nearby house, telling people on the porch to call the police.

Aaron's counsel cross examined Williams, establishing that the area where the shooting occurred was dark, that after the shooting began, she turned her back to run toward the porch, and that she had

---

**2.** William's statements to the police and subsequent testimony were the only evidence in the case that Derrick Aaron had a gun. Nearly all of the other evidence also contradicted her statement that Lorenzo was unarmed. With the exception of Derrick Aaron's statement to the police, all of the other witnesses capable of identifying the principals—including Lorenzo Miller himself—testified that Lorenzo Miller had a gun, which he fired at James Miller.

had a romantic relationship with Derrick Aaron. The State also cross-examined Williams, focusing on the fact that James Miller had no gun and that Terrese Aaron pulled out the first gun that she saw.

Counsel for Lorenzo Miller then asked two questions on re-direct, whether there was "any question" in Williams's mind that Lorenzo Miller had not shot the victim, and that Derrick and Terrese Aaron had shot the victim. Neither Aaron nor the State conducted any re-cross examination.

Following this hearing, Terrese Aaron's case was bound over for trial on charges of first-degree murder and armed criminal action. Williams died before trial.

The State filed a pre-trial motion to allow admission of Williams's preliminary hearing testimony at trial. Aaron opposed this motion on the ground that he had not had an adequate opportunity to cross-examine the witness, and the testimony would therefore violate his right to confrontation. The court granted the State's motion. The order granting that motion contained findings that Aaron had an adequate opportunity to cross-examine the witness and that the issues and parties at the preliminary hearing and the trial were identical.

At trial, the State introduced, over Aaron's renewed objection, a tape of Williams's preliminary hearing testimony, including both cross-examinations. That tape was played for the jury while jurors read along from a transcript of the testimony.

The jury found Aaron guilty of voluntary manslaughter and armed criminal action. Aaron appeals this conviction raising as his sole ground the admission of Montay Williams's preliminary hearing testimony.

## Standard of Review

The admission or exclusion of evidence at trial is within the broad discretion of the trial court. *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005). The admission of evidence at trial is reversible only upon a finding of clear abuse of discretion. *Id.* However, "[w]hether a defendant's constitutional rights were violated is a question of law reviewed *de novo.*" *State v. Nunnery*, 129 S.W.3d 13, 17 (Mo.App. S.D. 2004).

## Discussion

Aaron asserts that the case at bar presents an issue of first impression in Missouri to the extent that it requires the application of *Crawford* to the admissibility of preliminary hearing testimony at a subsequent criminal trial. As Aaron concedes on appeal, pre-*Crawford* Missouri decisions have consistently held that testimony of an unavailable declarant given at a properly held preliminary hearing affords "substantial compliance with the purposes behind the confrontation requirement." *State v. Holt*, 592 S.W.2d 759, 766 (Mo. banc 1980); *See also State v. Griffin*, 848 S.W.2d 464, 470 (Mo. banc 1993).

*Crawford*, however, proclaims that the principles of Missouri's prior analysis fail to satisfy the sole command of the Confrontation Clause. 541 U.S. at 60, 124 S.Ct. 1354. In particular, Aaron claims that *Crawford* overturns *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which held admissible prior testimony falling within a "firmly rooted hearsay exception" or bearing other "particularized guarantees of trustworthiness." 448 U.S. at 66, 100 S.Ct. 2531. Testimony falling within either of these categories was there described as bearing such "indicia of reliability" as not to offend the Sixth Amendment when introduced at trial. *Id.* at 65–66, 100 S.Ct. 2531 (quoting *Mancusi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972)).

"Indicia of reliability" has, at least since *Roberts,* been the touchstone of Missouri law governing the admissibility of prior testimony. *See, e.g., State v. Sutherland,* 939 S.W.2d 373, 378 (Mo. banc 1997). Because *Roberts* dealt with the exact issue before this court—the admissibility of preliminary hearing testimony of an unavailable declarant—*Crawford* requires, in the case at bar, an examination of the extent to which Missouri law relies upon "indicia of reliability," as that phrase is used in *Roberts.*

■ Under current law, Missouri courts addressing the admissibility of prior testimony consider whether (1) the prior testimony was given before a judicial tribunal, (2) the witness was sworn and testified, (3) the accused was present and had an opportunity for cross-examination, (4) the parties and issues were substantially the same as in the case on trial, and (5) the witness is no longer available to testify. *State v. Sumowski,* 794 S.W.2d 643, 648 (Mo. banc 1990). *Crawford* announces that, at least where testimonial hearsay[3] is at issue, the third factor considered by Missouri courts—opportunity for cross-examination—must be present in order to comport with the Confrontation Clause of the Sixth Amendment. 541 U.S. at 59, 124 S.Ct. 1354. *Crawford* thereby calls into question the applicability of the remaining four factors in cases involving testimonial hearsay. *Crawford* specifically undercuts the first two factors considered by Missouri Courts—that testimony is given before a judicial tribunal and under oath—by noting that the fact that a declarant's statement is "given in a testimonial setting is not an antidote to the confrontation problem, but rather the trigger that makes the

[Confrontation] Clause's demands most urgent." 541 U.S. at 65, 124 S.Ct. 1354.

The core principle of the *Crawford* decision requires that "prior trial or preliminary hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine." 541 U.S. at 57, 124 S.Ct. 1354. Given the emphasis that *Crawford* places on a criminal defendant's opportunity for cross-examination, it would seem that Missouri law governing the admissibility of preliminary hearing testimony comports with current Sixth Amendment jurisprudence only to the extent that an adequate opportunity to cross-examine that testimony has been provided.

By rule, Missouri criminal defendants in felony cases filed by way of a complaint are entitled to a preliminary hearing, and are granted the right to cross-examine witnesses and present evidence at that preliminary hearing. Rule 22.09; *accord* section 544.250, RSMo (granting right to preliminary examination). Because Aaron was afforded this opportunity to cross examine Williams at the consolidated preliminary hearing and he actually availed himself of that opportunity through counsel, it can only be said that *Crawford* was violated if that opportunity was inadequate.

Aaron advances four potential grounds for finding inadequate the opportunity he was afforded to cross-examine Williams at the consolidated preliminary hearing: Aaron complains (1) that he was denied the right to cross examine Williams in the presence of the jury, (2) that his prior counsel's actual cross examination of Williams was inadequate, (3) that Aaron was deprived of the opportunity to cross examine Williams concerning a prior statement to the police, since discovery was not complete at the time of the preliminary

---

**3.** While the *Crawford* decision declined to spell out a comprehensive definition of "testimonial" hearsay, it did note that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing." 541 U.S. at 68, 124 S.Ct. 1354.

hearing, and (4) that Williams's testimony at the consolidated preliminary hearing was offered for purposes other than establishing Aaron's guilt.

## I: Confrontation in the presence of the jury

■ Aaron's argument that the admission of Williams's preliminary hearing testimony denied him the right to cross-examine Williams in the presence of the jury appears at first blush to be buttressed by the wording of article I, section 18(a) of the Missouri Constitution, which declares, "in criminal prosecutions the accused shall have the right ... to meet the witnesses against him face to face." In contrast, the Confrontation Clause of the Sixth Amendment provides merely that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. Federal jurisprudence, however, has long recognized that the right to confrontation "includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). Missouri courts have consistently held that the quoted Missouri constitutional provision and the Sixth Amendment protect the same right, and the former is no more restrictive than the latter. *State v. Hester*, 801 S.W.2d 695, 697 (Mo. banc 1991).

At Aaron's trial, Williams' testimony was admitted under the traditional hearsay exception allowing for admission of prior testimony "where a witness is unavailable and has given testimony which was subject to cross-examination at previous judicial proceedings against the same defendant." *Holt*, 592 S.W.2d at 765. "This exception has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially

afforded provides substantial compliance with the purposes behind the confrontation requirement." *Id.* at 766 (quoting *Barber*, 390 U.S. at 722, 88 S.Ct. 1318).

■ Thus, although both the opportunity to cross-examine the witness and the opportunity for the jury to observe the same are embraced by the right to confrontation, "[t]he opportunity to cross-examine is indispensable to the exercise of the right, while the opportunity for the jury to observe the witness is an interest which gives way to considerations of necessity—as where the witness is unavailable." *State v. Lindsay*, 709 S.W.2d 499, 504 (Mo. App. W.D.1986). Where the initial opportunity to cross-examine a witness is sufficient to provide substantial compliance with the right to meet witnesses "face to face," subsequent admission of that testimony at trial offends neither the Missouri Constitution nor its federal counterpart. *Id.* Thus, Aaron's inability to cross-examine Williams in the presence of the jury did not render the transcript of her preliminary hearing testimony inadmissible at trial.

## II: Actual Adequacy of Cross-examination at the Preliminary Hearing

■ Aaron also asserts that the brevity of his trial counsel's actual cross-examination at the preliminary hearing demonstrates its inadequacy for Confrontation Clause purposes. Williams's direct testimony at the consolidated preliminary hearing amounted to just over twelve pages of the transcript of that hearing. The cross-examination conducted by Aaron's counsel is recorded in just under four pages, and is followed by the State's cross-examination, which is of a similar length.

■ Mere brevity of cross-examination, however, is not a basis for finding inadequate the *opportunity* that a criminal defendant has been afforded. *See State v.*

*Hicks*, 591 S.W.2d 184, 190 (Mo.App. 1979).[4] Once that opportunity has been provided to a criminal defendant, " '[t]he actual use then made of the opportunity becomes a matter of defense strategy, and deliberate trial tactics do not ordinarily exact constitutional protection.' " *Id.* at 190–191 (quoting *Phillips v. Wyrick*, 558 F.2d 489, 496 (8th Cir.1977)); *See also State v. Samuels*, 965 S.W.2d 913, 916 (Mo.App. W.D.1998) (noting that "courts will normally not grant relief for acts or omissions by counsel viewed as trial tactics").

Aaron argues that the brevity of cross-examination at the preliminary hearing was not the product of trial strategy by suggesting that his original trial counsel was inexperienced in the field of capital litigation.[5] However, no assertion of ineffective assistance of counsel is advanced on appeal and no reason is advanced to believe that counsel's potential inexperience resulted in a failure to adequately cross-examine Williams at the hearing. *See State v. Burns*, 112 S.W.3d 451, 454 (Mo. App. W.D.2003) (finding prior testimony properly admitted at retrial despite inadequate assistance of prior counsel where counsel's performance did not adversely affect cross-examination of the witness).

Even the relatively brief cross-examination that occurred in this case is adequate for confrontation purposes, absent the showing of some " 'new and significantly material line of cross-examination' " that was not explored in the prior examination. *Hicks*, 591 S.W.2d at 189 (quoting *Mancusi*, 408 U.S. at 215, 92 S.Ct. 2308). With one exception, discussed below, Aaron does not direct this court to any material line of

inquiry that was not addressed at the consolidated preliminary hearing.

Nor does Aaron assert that any limitation was, in fact, placed upon his opportunity to cross-examine Williams at the preliminary hearing. The transcript of that hearing reflects that the State raised no objections during that cross-examination, and the court imposed no limitations on that cross-examination. Because the appropriate test of admissibility "is the opportunity for full and complete cross-examination rather than the use that is made of that opportunity," *Id.* at 187, the length of the cross-examination to which Williams's testimony was subjected does not render that testimony inadmissible.

### III: Lack of Discovery Prior to the Preliminary Hearing

■ Aaron next asserts that his opportunity for cross-examination at the consolidated preliminary hearing was inadequate because the right of discovery had not yet attached at that hearing, thus depriving him of the opportunity to cross-examine Williams regarding her prior statements to the police. In the ordinary course of a felony prosecution, the state will file an indictment or complaint justifying the detention of the accused. *See* Rule 22.01. When prosecution is initiated by way of a complaint, a preliminary hearing must be conducted within a reasonable time, and, upon a finding of probable cause, is followed by the filing of an information, at which point discovery may commence. *See* Rules 22.09, 23.03, 25.01. Thus, it is only after the preliminary hearing has been conducted that the defendant has any

---

**4.** Note, however, that *Hicks* relies, in part, on the assertion that "[t]he best indicia of the reliability of direct testimony is often the brevity of, or even the absence of, cross-examination," 591 S.W.2d at 190, a rationale clearly at odds with the core holding in *Crawford*.

**5.** Aaron's original trial counsel withdrew after the preliminary hearing and counsel from the Missouri Public Defender Capital Litigation Division entered the case.

right to the disclosure of evidence in the hands of the state. *See Griffin,* 848 S.W.2d at 470 (noting that "discovery cannot be completed before [the preliminary hearing]").

■ In the usual case, witnesses who testify at the preliminary hearing will also be available to testify at trial. It is therefore of no import, in the usual case, whether the accused has had "the opportunity for full and complete cross-examination," *Hicks,* 591 S.W.2d at 187, at the preliminary hearing, since that opportunity will be afforded at trial. Indeed, the rights to cross-examine prosecution witnesses and present witnesses on behalf of the defense at the preliminary hearing, like the right to the hearing itself, are granted by Rule 22.09(b), and are "not even a part of the constitutional right to due process." *State v. Menteer,* 845 S.W.2d 581, 584 (Mo.App. E.D.1992).

■ Because the jurisdiction of the court that ultimately tries the case does not derive from the preliminary hearing, but "comes originally from the formal accusation by indictment or information," *Clark,* 546 S.W.2d, at 462, the practical effect of a preliminary hearing is merely to determine whether the accused will be detained until trial, released pending trial, or discharged. Rule 22.09; *see State v. Turner,* 353 S.W.2d 602, 604 (Mo. banc 1962) (noting that preliminary hearings are "designed to prevent possible abuse of power by the prosecution and at the same time permit the arrest and detention of an accused in a proper case"); *see also* section 544.250, RSMo. Further, because the preliminary hearing does not place the accused in constitutional jeopardy, the prosecution remains free, in the event of a discharge, to refile the complaint or seek an indictment. *State ex rel. Brown v. Duggins,* 601 S.W.2d 11, 13 (Mo. banc 1980).

Where, however, witnesses become unavailable between the preliminary hearing and trial, the testimony offered at that hearing takes on an additional significance. *State ex rel. Turner v. Kinder,* 740 S.W.2d 654, 657 (Mo. banc 1987) (Blackmar, J., concurring). That significance can rise to the level of constitutional import where, as here, the preliminary hearing testimony, which was not accompanied by the constitutional protections that would be afforded at trial, is subsequently introduced at trial. Had Aaron been denied access to Williams's prior statements to police at a trial in which Williams testified, an appeal on due process grounds would lie in this court based upon the prosecution's failure to disclose relevant impeachment evidence. *See, e.g., State v. Robinson,* 835 S.W.2d 303 (Mo. banc 1992).

■ The State's suggestion to this court, that Williams's first statement to police was not a prior inconsistent statement because it merely omitted an otherwise consistent detail, is unavailing. As the United States Supreme Court has recognized, "inconsistency" for impeachment purposes takes many forms other than outright contradiction. *Jencks v. United States,* 353 U.S. 657, 667, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). "The omission from [prior statements] of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony." *Id.* Because Williams's first statement to Officer Jobe makes no mention of Aaron standing over Miller firing his gun at a prone victim, that statement falls within the category of inconsistent statements in which facts subsequently related are initially omitted. A criminal defendant's opportunity to cross-examine a witness based upon a prior inconsistent statement of the sort at issue in

the present case would thus seem to be a matter of right. *See State v. Wolfe,* 13 S.W.3d 248, 274 (Mo. banc 2000).

The difficulty in the present case arises from the practical impossibility of providing a criminal defendant with impeachment evidence prior to the preliminary hearing. This same difficulty was addressed by the Missouri Supreme Court in *Griffin,* where it was noted that, "the scheduling of the preliminary hearing makes it preferable to have live testimony at trial rather than reading into the trial record the transcript of the testimony at the preliminary hearing for the very reason that discovery cannot be completed before such a hearing." 848 S.W.2d at 470.[6] The *Griffin* court nonetheless found that "the inability of defense counsel to conduct the same cross-examination early in the pretrial process as would be conducted at trial does not mean that the testimony lacks sufficient reliability to admit it for trial." 848 S.W.2d at 470. The holding in *Griffin* is thus based upon a finding that the testimony in question was not lacking in reliability. It is not clear from *Griffin* itself, however, to what extent that reliability derives from the adequacy of the cross-examination conducted, as opposed to other factors. *Cf. Sumowski,* 794 S.W.2d at 648 (listing conditions relevant to determining the admissibility of prior testimony). This distinction is critical in light of *Crawford's* announcement that confrontation by way of adequate cross-examination is the only constitutionally sanctioned method for assessing the reliability of testimonial hearsay. 541 U.S. at 69, 124 S.Ct. 1354.

Because Aaron makes no attempt to distinguish the present case from *Griffin* and no material distinction is apparent, the question presented by this appeal is whether that case is in harmony or conflict with *Crawford.* Apart from the language quoted above, noting the difficulty of cross-examining a witness before discovery has commenced and finding that this difficulty does not result in unreliability, *Griffin* does not discuss the adequacy of the cross-examination that occurred at the preliminary hearing. For the general proposition that preliminary hearing testimony of an unavailable witness is admissible at trial, *Griffin* relies upon *Holt,* in which that rule was applied to the testimony of a preliminary hearing witness who subsequently invoked the Fifth Amendment privilege against self-incrimination at trial. 592 S.W.2d at 765–66. On facts similar to *Griffin,* *Holt* found that since the defendant was permitted to cross-examine witnesses at the prelimi-

---

**6.** *Griffin* also states, in a footnote: "In fact, one of the many purposes of a preliminary hearing is to enable the two sides to discover some of the evidence that the other side has via the witnesses put on the stand and the exhibits introduced." 848 S.W.2d at 470 n. 4. This footnote is the most recent statement of the Supreme Court regarding the purpose of a preliminary hearing. However, the case does not otherwise address the purpose of a preliminary hearing, and the footnote itself runs directly counter to basically every other reported judicial statement on the topic. *See State v. Howell,* 524 S.W.2d 11, 20 (Mo. banc 1975) (noting a preliminary hearing "is solely for the determination of probable cause"); *State v. Turner,* 353 S.W.2d 602, 604 (Mo. 1962) (noting "[a] preliminary examination is ... merely an inquiry to determine if there is probable cause"); *State v. Woods,* 723 S.W.2d 488, 505 (Mo.App. S.D.1986) (noting preliminary hearings are not intended "to provide the accused a forum for discovery"); *Nero v. State,* 579 S.W.2d 638, 639 (Mo.App. E.D. 1979) (noting that while the discovery of a basis for impeaching witnesses at trial may be an "incidental by-product [of a preliminary hearing] ... that is not the purpose of a preliminary hearing"); *but cf. State v. Clark,* 546 S.W.2d 455, 462 (Mo.App. W.D.1976) (acknowledging that the record of a preliminary hearing "secures to an accused ... a basis for the examination of witnesses on the trial of the offense").

nary hearing, he "was afforded substantial compliance with the purposes behind the confrontation requirement." *Id.* at 766.

*Holt,* in turn, cites to *State v. Murphy,* 592 S.W.2d 727 (Mo. banc 1979), which applied the same rule of admissibility to the prior trial testimony of two witnesses whom the prosecutor was unable to produce at the defendant's retrial. 592 S.W.2d at 731. *Murphy,* however, explicitly notes that the testimony at issue in that case, "was not, as in many of the cases where the transcript has been held inadmissible, testimony from a preliminary hearing where the cross-examination was perfunctory at best or waived altogether." *Id.* Accordingly, *Murphy* presented no occasion to assess the adequacy of cross-examination at a preliminary hearing.

Because neither *Griffin* nor its immediate progenitors address what quality of the cross-examinations conducted at those preliminary hearings rendered them adequate for confrontation purposes, it can only safely be said that current Missouri Supreme Court precedent generally finds such testimony reliable. While reliability would be sufficient to satisfy the *Roberts* test, *Crawford* may fairly be viewed as undermining the rationale of *Griffin* to the extent that Missouri law allowed for the consideration of various "reliability" factors at the time *Griffin* was decided.

■ Nonetheless, it cannot concomitantly be said that *Griffin's* ultimate holding is contrary to *Crawford. Crawford* does not suggest that reliability is irrelevant to the question of admissibility; *Crawford* merely holds that reliability must be "assessed in a particular manner: by testing in the crucible of cross-examination." 541 U.S. at 61, 124 S.Ct. 1354.

This court is constitutionally bound to follow the latest controlling decisions of the Missouri Supreme Court. *Knorp v. Thompson,* 352 Mo. 44, 175 S.W.2d 889, 894 (1943). Thus, unless *Griffin* is "plainly in conflict with" *Crawford, Griffin* must control the outcome of the present case. *St. Louis Sw. Ry. Co. of Tex. v. Spring River Stone Co.,* 169 Mo.App. 109, 154 S.W. 465, 467 (1913) (Sturgis, J., concurring). Because *Griffin* can be broadly read to hold that preliminary hearing cross-examination—even in the absence of the sort of disclosures that discovery would produce—is adequate for confrontation purposes, *Griffin* is not plainly in conflict with *Crawford. See id.* This court is thus constrained to apply *Griffin* to the case at bar and find that the absence of discovery before the preliminary hearing at issue did not render Williams's testimony inadmissible at trial.

## IV: The Purpose of Williams' Preliminary Hearing Testimony

■ Aaron finally asserts that he was denied an adequate opportunity to cross-examine Williams at the consolidated preliminary hearing because her testimony was offered at that hearing for purposes other than establishing his guilt. The purpose for which prior testimony is offered at a subsequent proceeding has traditionally been a concern of the rule against hearsay evidence, and, in particular, the exception for prior recorded testimony. *See Jaccard v. Anderson,* 37 Mo. 91, 94–95 (Mo.1865). Until recently, that exception was directly incorporated into confrontation jurisprudence by the reasoning of the *Roberts* decision. 448 U.S. at 66, 100 S.Ct. 2531.[7]

---

**7.** From the record on appeal, it appears that Aaron did not separately object to the admission of Williams's testimony on hearsay grounds but relied exclusively upon a criminal defendant's rights to due process and confrontation.

Thus, under the *Roberts* test, the hearsay at issue in the present case would have been admissible to the extent that prior recorded testimony is a "firmly rooted hearsay exception." *Id.* In overruling the "indicia of reliability" test found in *Roberts*, however, *Crawford* has the effect of shifting analysis away from the law of evidence. *Cf. Crawford*, 541 U.S. at 50–51, 124 S.Ct. 1354 (rejecting the view that application of the Confrontation Clause depends upon the law of evidence for the time being (internal quotes omitted)); *but cf., Dutton v. Evans*, 400 U.S. 74, 86, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (noting that the "Confrontation Clause and the evidentiary hearsay rule stem from the same roots," while declining to equate the two). Nonetheless, *Crawford* reaffirms that, at its core, the Sixth Amendment deals with the admissibility of a particular form of hearsay evidence and identifies that subset of potential hearsay as *"testimonial* statements against the accused in a *criminal* case." 541 U.S. at 56, 124 S.Ct. 1354.

■ In Missouri, a party offering the prior testimony of an unavailable declarant must show that, (1) the declarant is unavailable, (2) the parties are the same, or had the same interest in the litigation, and (3) the matters at issue in both cases are substantially identical. *Bartlett v. Kansas City Pub. Serv. Co.*, 349 Mo. 13, 160 S.W.2d 740, 743 (1942). Wigmore puts this last requirement thus: "Unless the *issues were then the same* as they are when the former statement is offered, the cross-examination would not have been directed to the same material points of investigation, and therefore could not have been an adequate test for exposing inaccuracies and falsehoods." 5 Wigmore, Evidence, sec. 1386 (Chadbourn rev.1972).

Wigmore also cites a Missouri article on the topic, which notes that such testimony "is not admissible unless the issues are essentially the same," and adds that "[p]erhaps it would be more accurate to say, unless the issue or issues as to which the testimony in question is offered entered in substantially the same way in the two proceedings." William G. Hale, *The Missouri Law Relative to the Use of Testimony Given at a Former Trial*, 14 St. Louis L.Rev. 375, 383 (1929) (approvingly cited in *Bartlett*, 160 S.W.2d at 745).

■ *Bartlett* is the leading Missouri case dealing with the requirement that former testimony must have addressed the same issue on which it is offered in a subsequent trial. *Maxwell v. City of Springfield*, 705 S.W.2d 90, 92 (Mo.App. S.D.1986). It was there held that:

> For cross-examination to be effective it must be directed to the precise issue subsequently involved. If the matters at issue in the subsequent case were only collaterally and remotely involved in the former case there would be no reason to fully and carefully cross-examine as to such points at the time when the witness was available for cross-examination. Hence no real opportunity for cross-examination is had and the testimony offered in the subsequent trial is but little different than a mere ex parte affidavit.

*Bartlett*, 160 S.W.2d at 743 (citing Wigmore, 3d Ed., Vol. 5 section 1386 et seq.) Thus, the test of admissibility is whether the party against whom prior testimony is now offered had, at the time the testimony was originally given, "the same interest and motive in his cross-examination." *Maxwell*, 705 S.W.2d at 93 (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure, sec. 2150, p. 469 (1970)). While *Bartlett* and *Maxwell* were both civil cases, the rule is equally applicable in criminal contexts. *Sumowski*, 794 S.W.2d at 648; *see also, State v. Purlee*, 839 S.W.2d 584,

593 (Mo. banc 1992) (containing dicta that identity of issues "is necessary if the cross-examination in the prior case is to be an adequate substitute for the absence of cross-examination in the present case").[8]

*State v. Brown*, 331 Mo. 556, 56 S.W.2d 405 (1932), involved testimony from a prior trial admitted over the defendant's Sixth Amendment objection. The defendant there had been convicted at a prior trial of transportation of corn whiskey. 56 S.W.2d at 406. Following the grant of a defense motion for new trial, the State filed an amended information charging the lesser offense of possession of corn whiskey. *Id.* At the second trial, the testimony of two witnesses from the first trial was offered on the ground that the witnesses had died in the meantime. *Id.* at 407. The trial court admitted that testimony over Brown's objection that his right to confront the witnesses was violated in that the prior trial was on different charges. *Id.* On appeal, it was held that:

> [I]n order to render admissible against the defendant testimony of a witness taken at a former trial or hearing, the witness having since died, there need not be precise technical identity of the charge on which the first hearing was had and the testimony given with that on which the later trial is held and the testimony of the deceased witness is offered, but there must be substantial identity of the issues involved; and of course the defendant must have been

afforded opportunity for full cross-examination of the witness.

*Id.* at 409.

Missouri cases dealing with the subsequent admission of preliminary hearing testimony, however, have not specifically discussed the "identity of issues" requirement described by Wigmore and found dispositive in the above cases. Rather, cases dealing with the preliminary hearing testimony of an unavailable declarant have broadly held that the admission of such testimony at a subsequent trial does not violate the Confrontation Clause because the defendant's opportunity to cross-examine at the preliminary hearing affords "substantial compliance with the purposes behind the confrontation requirement." *Holt*, 592 S.W.2d at 766.

The facts of the present case suggest two inter-related problems regarding the identity of issues at the consolidated preliminary hearing and Aaron's subsequent trial: First, as Aaron asserts, Williams's testimony at the hearing was offered by a co-defendant, Lorenzo Miller, with the primary purpose of exculpating Miller rather than inculpating Aaron, and second, the issue at the preliminary hearing was whether probable cause existed such that Aaron could be bound over for trial, whereas the issue at trial was whether Aaron was guilty of the charged crimes beyond a reasonable doubt.

■ As a threshold matter, it should be noted that the presence of additional

---

**8.** The defendant in *Purlee* was charged with the possession of eighty pounds of marijuana found in a vehicle he was driving. 839 S.W.2d at 586. On appeal following conviction, Purlee claimed the trial court had erred by excluding the introduction of an information charging a co-occupant of the vehicle with possession and transportation of marijuana along with a docket sheet showing the co-occupant's guilty plea to those offenses. *Id.* at 592. At trial, however, Purlee failed to preserve this issue by making an appropriate offer of proof. *Id.* Declining to rule solely on procedural grounds, the Missouri Supreme Court conducted plain error review of the issue, noting Purlee's failure to proffer the evidence prevented a finding of manifest injustice, since in the absence of a full factual record, it was impossible to assess whether the issues were identical in both proceedings. *Id.*

parties at an earlier stage of proceedings will generally not destroy the requisite identity of parties for purposes of the hearsay exception. *See Allen v. Chouteau,* 102 Mo. 309, 14 S.W. 869, 871 (1890). However, that the State did not offer Williams's testimony at the consolidated preliminary hearing does suggest that her testimony was not necessary for the State to carry its burden of establishing probable cause. In fact, Williams's testimony was never offered for that purpose. Instead, Lorenzo Miller offered her as a defense witness only after the State had presented all of its evidence.

If, as the State apparently believed, the witnesses that testified on behalf of the prosecution were sufficient to establish probable cause, no conceivable defense purpose could have been served by a full cross-examination of Williams at the preliminary hearing. No showing of bias, inconsistency, inability to observe, or any other fact tending to establish lack of credibility on the part of Williams could have prevented a finding of probable cause at that hearing because probable cause was established before she testified.

The United States Supreme Court has recognized that a preliminary hearing "is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." *Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). Missouri's Supreme Court has similarly recognized that the inquiry at a preliminary hearing:

> [I]s directed to ascertaining whether or not a felony has been committed and whether or not there is probable cause to believe the accused guilty thereof. It

does not contemplate the establishment or refutation of the guilt of the accused beyond a reasonable doubt as is the ultimate fact issue at the trial on the merits, and for which counsel has had ample opportunity to prepare.

*State v. Lloyd,* 337 Mo. 990, 87 S.W.2d 418, 421 (1935).

Other states are split as to whether the purpose of a preliminary hearing is so different from the purpose of a trial as to render cross-examination at the preliminary hearing an insufficient substitute for cross-examination at trial. *See* Francis M. Dougherty, Annotation, *Admissibility Or Use in Criminal Trial of Testimony Given at Preliminary Proceeding by Witness Not Available at Trial,* 38 A.L.R.4th 378, section 6 (1985 & Supp.2006) (collecting cases). Aaron directs this court to the opinion in *People v. Fry,* 92 P.3d 970 (Colo. banc 2004), in which the Colorado Supreme Court, applying *Crawford,* found that preliminary hearings in Colorado do not provide an adequate opportunity for cross-examination to satisfy the Confrontation Clause. The court there found that:

> Because credibility is not at issue and probable cause is a low standard, once a prima facie case for probable cause is established, there is little defense counsel can do to show that probable cause does not exist. Therefore, as a practical matter, defense counsel may decline to cross-examine witnesses at the preliminary hearing, understanding that the cross-examination would have no bearing on the issue of probable cause and that the judge may limit or prohibit the cross-examination.

*Fry,* 92 P.3d at 977; *accord State v. Stuart,* 279 Wis.2d 659, 695 N.W.2d 259 (2005) (applying similar reasoning and reaching a similar result).[9]

**9.** In *Stuart,* the state apparently conceded that the defendant's opportunity for cross-

In contrast to *Fry*, the State cites a Washington case, *State v. Mohamed*, 132 Wash.App. 58, 130 P.3d 401 (2006),[10] in which the Washington Court of Appeals found that a criminal defendant's pre-trial opportunity to cross-examine a witness who was unavailable at the time of trial was sufficient to protect the right of confrontation. 130 P.3d at 406. In doing so, the Washington Court examined the differences between the opportunities for cross-examination afforded the respective defendants in *Fry* and *Mohamed*. *See id.* at 404. Unlike *Fry*, the pretrial hearing in *Mohamed* was not limited to a determination of probable cause, because the issue at the pretrial hearing itself was the admissibility of an out-of-court statement made—and later recanted—by the witness. *Id.* Because the issue at that hearing involved whether that statement fell within the "excited utterance" exception to the hearsay rule, the witness testified at the pretrial hearing as to the making of the statement, the circumstances surrounding the statement, and her motive for fabricating the statement. *Id.* at 402–03. More importantly, because of the issue involved, the trial court was in a position to "make credibility determinations in deciding whether [the statement] qualified as an excited utterance," *id.* at 404, and the defendant's "interest at the pretrial hearing was the same as it would have been at trial, and equally pressing: to establish [the witness'] recantation as credible, and to prove that her out of court statements were unreliable," *id.* at 405. Under these circumstances, the Washington Court found that no *Crawford* violation resulted from the admission of the pretrial hearing testimony when the witness became unavailable before trial. *Id.* at 406.

The preliminary hearing conducted in the present case more closely resembles the hearing at issue in the *Fry* case than in *Mohamed*. Before an information charging a felony may be filed in Missouri, Rule 22.09(b) requires that a preliminary hearing be held. *Accord* section 544.250, RSMo. If, at that hearing, "the judge finds probable cause to believe that a felony has been committed and that the defendant has committed it, the judge shall order the defendant to appear and answer to the charge; otherwise, the judge shall discharge the defendant." Rule 22.09(b); *accord* section 544.410, RSMo. In the instant case, as in *Fry* but not *Mohamed*, this determination of probable cause was the sole purpose of the preliminary hearing conducted. *See State v. Clark*, 546 S.W.2d 455, 462 (Mo.App.1977) (noting a preliminary hearing is a "limited inquiry" into

examination at the preliminary hearing was significantly limited. 695 N.W.2d at 265. The Wisconsin Supreme Court had previously held, in *State v. Stuart*, 262 Wis.2d 620, 664 N.W.2d 82 (2003), that the preliminary hearing testimony involved bore sufficient indicia of reliability to satisfy the *Roberts* test. 695 N.W.2d at 260–61. Before the case returned to that court on the defendant's appeal of a denial of postconviction relief, *Crawford* was decided. *Id.* at 261. At that point, the state high court reversed and remanded on the basis of *Crawford*. *Id.* at 270.

**10.** A second case cited by the State on this point, *State v. Hannon*, 703 N.W.2d 498 (Minn.2005), involved the subsequent admission of testimony from a prior trial, rather than preliminary hearing testimony. 703 N.W.2d at 507. The adequacy of cross-examination afforded at a preliminary hearing was therefore not at issue in that decision. *Id.* (noting that the defendant had had a "full opportunity to cross-examine [the witness] at his prior trial"). Other post-*Crawford* cases allowing the admission of preliminary hearing testimony of an unavailable witness include *State v. Young*, 277 Kan. 588, 87 P.3d 308 (2004), *State v. Henderson*, 139 N.M. 595, 136 P.3d 1005 (App.2006), and *Primeaux v. State*, 88 P.3d 893 (Okla.Crim.App.2004).

probable cause).[11]

Because "[a] preliminary examination is in no sense a trial and does not finally adjudicate the guilt or innocence of an accused," *id.*, inquiry into matters collateral to a determination of probable cause may be limited at a preliminary hearing. *Cf. State v. Menteer*, 845 S.W.2d 581, 584 (Mo.App. E.D.1992) (finding prosecution witness's credibility a collateral matter and, therefore, "not pertinent as to whether there was probable cause to charge appellant for his actions in the commission of the crime"); *Nero v. State*, 579 S.W.2d 638, 639 (Mo.App. E.D.1979) (finding the discovery of impeachment evidence outside the appropriate scope of a preliminary hearing).

These limitations on the scope of a preliminary hearing flow naturally from the limited function that the hearing is intended to serve, which is "to prevent possible abuse of power by the prosecution and at the same time permit the arrest and detention of an accused in a proper case." *State v. Turner*, 353 S.W.2d 602, 604 (Mo. banc 1962).[12] Given the limited scope of a preliminary hearing and the purposes for which Williams's testimony was offered, it is difficult to find that Aaron had "the same interest and motive in his cross-examination," *Maxwell*, 705 S.W.2d at 93, at that hearing that he would have had at a trial at which Williams testified. Nonetheless, Missouri confrontation jurisprudence rests upon the general rule that "[t]estimony given at a properly held preliminary hearing satisfies the requirements of the confrontation clause of the Sixth Amendment when the witness is unavailable to testify at trial." *Griffin*, 848 S.W.2d at 470. The facts of the present case thus present the odd possibility that a criminal defendant's confrontation rights may be more closely protected in Missouri by the law of evidence than by the specific command of the Sixth Amendment.

Anomalous though this circumstance may be, *Crawford* cannot be said to address this problem unless the requirement that criminal defendants be afforded an "adequate opportunity to cross-examine" preliminary hearing testimony necessitates a stricter adherence to the requirements of the "prior testimony" exception than is currently the practice in Missouri courts. Such a reading, which would effectively bring the law of hearsay into confrontation analysis through the back door of "adequa-

---

11. *But see* note 7, *supra*, concerning footnote 4 from the *Griffin* opinion.

12. The possibility, inherent in the State's argument, that preliminary hearings may become a venue for the preservation of potential trial evidence does raise judicial economy concerns. As the *Fry* court acknowledged:
> Preliminary hearings are limited to a determination of probable cause so that they do not become mini-trials. Were we to allow extensive cross-examination by defense counsel so as to prevent any Confrontation Clause violations at trial if a witness were to become unavailable, we would turn the preliminary hearing in every case into a much longer and more burdensome process for all parties involved.

92 P.3d at 978. Missouri courts and practitioners have a similar interest in maintaining the manageability of preliminary hearings. *See* Robert H. Dierker, 28 Missouri Practice, Missouri Criminal Practice Handbook, section 4:6.2 (2006) (noting that preliminary hearings "will seldom be elaborate, and the defendant will almost never present evidence" and that "associate circuit judges will tolerate lengthy cross-examinations by defense counsel only in exceptional circumstances"). Nonetheless, preliminary hearing testimony of unavailable witnesses is currently admissible in Missouri courts without producing any undue burden upon the parties involved in those hearings.

cy," would itself be anomalous in light of the fact that *Crawford* purports to close the door on analysis of "firmly rooted hearsay exceptions" by eliminating the "indicia of reliability" test articulated in *Roberts*. *See* 541 U.S. at 61, 124 S.Ct. 1354 (noting that Sixth Amendment protection should not be left "to the vagaries of the rules of evidence").

Consequently, it cannot be said that *Crawford* requires a reversal in the present case, despite the different purposes for which Williams's testimony was offered at the preliminary hearing and at trial. *Crawford* does not overrule or contradict *Holt's* holding that the cross-examination that occurs at a preliminary hearing can "afford[ ] ... substantial compliance with the purposes behind the confrontation requirement." 592 S.W.2d at 766. Rather, the core holding of *Crawford* is that such testimony cannot be admitted based on a mere finding of "reliability." 541 U.S. at 60, 124 S.Ct. 1354. Where, as here, testimony is subjected to cross-examination at a preliminary hearing, Missouri law allows for the admission of that testimony at trial in the event that the witness becomes unavailable. *Holt*, 592 S.W.2d at 766. Thus, the purposes for which Williams's testimony was offered at the consolidated preliminary hearing did not render it inadmissible at trial.

### Conclusion

This court is constitutionally bound to follow current Missouri law, as expressed by the Missouri Supreme Court. Mo. Const. art. V, sec. 2. The present case falls squarely within the precedent established by *Holt* and *Griffin*. Absent a determination by the Missouri Supreme Court that those cases are inconsistent with the reasoning of *Crawford*, this court is bound to

follow those decisions. Accordingly, the judgment of conviction is affirmed.

JOSEPH M. ELLIS, Presiding Judge, and ROBERT G. ULRICH, Judge, concur.